**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-cv-02828-STV

Kenneth Hansen,

    Plaintiff,

v.

Valor Roofing LLC d/b/a Valor Roof and Solar; Telt Ventures, LLC d/b/a 1 Solar d/b/a One Solar; and GoodLeap, LLC,

    Defendants.

---

**DEFENDANT GOODLEAP LLC'S MOTION TO COMPEL ARBITRATION AND
DISMISS PROCEEDINGS**

---

Defendant GoodLeap, LLC ("GoodLeap") responds to Plaintiff's Complaint[1] by moving to both compel arbitration and dismiss the present action (the "Motion") under the Federal Arbitration Act.[2]

## I. INTRODUCTION

Plaintiff purchased a solar panel array from his home and financed that transaction through GoodLeap. Plaintiff has filed this lawsuit to avoid his financial obligations to GoodLeap

---

[1] GoodLeap's Motion in lieu of an answer satisfies its pleading requirements under the Federal Rules because "[a] defendant in a pending lawsuit may file a petition or motion to compel arbitration in lieu of an answer to the complaint . . . " *Lamkin v. Morinda Properties Weight Parcel, LLC*, 440 F. App'x 604, 607–08 (10th Cir. 2011) (citing *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 83, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)).

[2] Certificate of Conferral Pursuant to D.C. COLO. LCivR 7.1(a): Undersigned counsel conferred with Plaintiff's counsel by email on November 9 and 10 regarding the relief sought by this motion. Plaintiff opposes the Motion.

1

under the parties' Loan Agreement and seek damages under various statutory causes of action relating to the Loan Agreement. Plaintiff's lawsuit, however, ignores his agreement to resolve any dispute with GoodLeap through arbitration. The broad arbitration provision in the Loan Agreement covers all of Plaintiff's claims; the Court should therefore compel arbitration and dismiss this lawsuit.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff purchased solar panels through Defendant Telt Ventures LLC d/b/a 1 Solar ("1 Solar") and Valor Roof and Solar, Inc. ("Valor")[3] on July 7, 2021. As part of that purchase, Plaintiff executed a contract with 1 Solar for the purchase of the solar system, and a separate financing agreement with GoodLeap to finance that purchase (the "Loan Agreement"). The Loan Agreement is attached as **Exhibit 1**. A DocuSign Certificate of Completion providing an audit trail of when, where, and how Plaintiff signed the Loan Agreement is attached as **Exhibit 2**.

Plaintiff claims that Defendants made alleged misrepresentations and inadequate disclosures to him in connection with the sale, financing, and installation of solar panels on his home. *See* ECF No. 4, Compl. ¶¶ 17-34. Plaintiff's Complaint asserts claims for relief under the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq. ("EFTA"), the Colorado Consumer Protection Act ("CCPA"), and a claim for declaratory judgment. As part of his claim for declaratory judgment, Plaintiff asserts that there is an actual and justiciable controversy under the Loan Agreement between Plaintiff and GoodLeap. ECF No. 4, Compl. ¶ 182.

The Loan Agreement between Plaintiff and GoodLeap contains the following valid and

---

[3] Plaintiff's Complaint names the incorrect entity, Valor Roofing LLC.

enforceable arbitration clause:

> **ARBITRATION AGREEMENT. All claims and disputes arising out of or relating to this Agreement (hereafter, "Dispute(s)") shall be resolved by binding arbitration on an individual basis. The arbitrator shall also decide any issues relating to the making, validity, enforcement, or scope of this arbitration agreement, arbitrability, defenses to arbitration including unconscionability, or the validity of the jury trial, class action or representative action waivers (collectively, "arbitrability" issues). YOU HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO GO TO COURT AND HAVE A TRIAL IN FRONT OF A JURY. FURTHER, UNLESS YOU OPT OUT OF ARBITRATION, YOU ALSO AGREE TO WAIVE ANY RIGHT TO BRING OR PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION. The arbitrator shall have the authority to award any relief, including injunctive relief, which is available under applicable law.**

Ex. 1 at § 15 (emphasis in original). Instead of pursuing his claims against Plaintiff through arbitration, Plaintiff filed this Action on September 26, 2022, in an Arapahoe County District Court, captioned *Kenneth Hansen v. Valor Roofing LLC d/b/a Valor Roof and Solar; Telt Ventures LLC d/b/a 1 Solar and d/b/a One Solar; and GoodLeap LLC*, No. 2022CV031820. On October 27, 2022, GoodLeap timely removed this action to this Court pursuant to 28 U.S.C. 1331.

### III. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has "long recognized and enforced a liberal federal policy favoring arbitration agreements," and under this policy, doubts concerning the scope of arbitrable issues are resolved in favor of arbitration. *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir.2004) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). Similarly, Colorado Law favors arbitration as a method

of dispute resolution. *See Peterman v. State Farm Mut. Automobile Ins. Co.*, 961 P.2d 487, 493 (Colo. 1998); *Judd Constr. Co. v. Evans Joint Venture*, 642 P.2d 922, 924 (Colo. 1982) ("Colorado policy "foster[s] and encourage[s] the use of arbitration as a method of dispute resolution.").

The decision whether to enforce an arbitration agreement requires a two-step inquiry: first, the Court must determine whether a valid agreement to arbitrate exists; and, second, the Court must determine whether the specific dispute falls within the scope of that agreement. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626 (1985).

On a motion to compel arbitration, "the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith." *Bosc, Inc. v. Board of County Commissioners Cnty. Of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017) (citing *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012); 9 U.S.C. § 4.)

IV.   ARGUMENT

A.   A Valid Arbitration Agreement Exists Between Plaintiff and GoodLeap

The first step in determining whether the Court should compel Arbitration in this case is to establish that there exists an agreement between the parties to arbitrate this dispute. *See Hardin v. First Cash Finan. Servs. Inc.*, 465 F.3d 470, 475 (10th Cir. 2006). In determining whether a party has agreed to arbitrate, the Court would apply ordinary state-law principles that govern the formation of contracts. *Id.* These principles, however, are read in the context of the

policies favoring arbitration. For instance, "the parties' intentions control, but those intentions are generously construed as to the issues of arbitrability." *Image Softward, Inc. v. Reynolds and Reynolds Co.,* 459 F.3d 1044, 1055 (10th Cir. 2006). In Colorado, a contract is formed when (1) "an offer is made and accepted," and (2) the "agreement is supported by consideration." *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008). As explained below, the Loan Agreement and the contract's arbitration provision is a valid, enforceable agreement under the applicable principles of Colorado contract law.

First, the Loan Agreement itself confirms the existence of an offer and acceptance as evidenced by the parties' electronic signatures. Ex. 1 at 13. Indeed, the Loan Agreement contains the electronic initials and signature of Plaintiff throughout the document. *Id.* at 2, 4, 5, 9, 13, 17, 18, 19. Importantly, Plaintiff specifically initialed directly below the arbitration provision indicating his agreement to arbitrate any dispute with GoodLeap. *Id.* at 9.

Plaintiff's Complaint appears to challenge whether or not Plaintiff's electronic initials and signatures on the Loan Agreement are valid and made by him. To the extent that Plaintiff disputes that he accepted the Loan Agreement or the arbitration clause, the Loan Agreement specifically provides that such issues shall be decided by the arbitrator:

> **The arbitrator shall also decide any issues relating to the making, validity, enforcement, or scope of this arbitration agreement, arbitrability, defenses to arbitration including unconscionability, or the validity of the jury trial, class action or representative action waivers (collectively, "arbitrability" issues).**

*See* Ex. 1 at § 15 (emphasis in original).

Further, Plaintiff's electronic signature provides definitive evidence of Plaintiff's acknowledgement and acceptance of the Loan Agreement, including the arbitration provision. Under Colorado law, a signature must not be denied legal effect because it is in electronic form.

5

*See* CRS 24-71.3-107 ("an electronic signature satisfies the law" where a signature is required) *see also* 15 U.S.C. § 7001(a)(1) (establishing authority for enforcement of contract containing electronic signature in interstate commerce).

Courts across the country have rejected essentially identical arguments and enforced agreements, including arbitration agreements, accepted through electronic signatures. *Schrock v. Nomac Drilling LLC*, No. 15-cv-1692, 2016 WL 1181484, at * 3-4 (W.D. Penn. March 28, 2016) (compelling arbitration and relying on the audit trail associated with the plaintiff's electronic signature, among other evidence, to find that "Plaintiff, and not some other person – whom Plaintiff has not even attempted to identify - . . . electronically signed the form."); *Moton v. Maplebear Inc.*, No. 15 CIV. 8879, 2016 WL 616343, at *1-2, 5 (S.D.N.Y. Feb. 9, 2016) (e-signature provider's "time-stamped audit trail tracks – using IP addresses and other identifying data – when each [signatory] receives, views and executes each [agreement]" was sufficient to establish that the signer's signature was his own, and that this evidence, in turn, established assent to the arbitration agreement.); *Woods v. Vector Marketing Corp.*, No. C-14-0264 EMC, 2014 WL 4348285, at *1, 3 (N.D. Cal. Aug. 28, 2014) (enforcing agreement and compelling arbitration where plaintiff had signed contract using DocuSign); *Obi v. Exeter Health Resources, Inc.,* No. 18-cv-550-SM, 2019 WL 2142498, at *4 (D. N.H. May 22, 2019) (rejecting the plaintiff's argument that her electronic signature on an agreement had been forged, where DocuSign eSignature audit logs showed that she had viewed and signed the agreement).

Here, Plaintiff acknowledges in his Complaint that the Lending Agreement was "accepted by DocuSign via e-mail." *ECF No. 4*, Compl. ¶ 59. The Lending Agreement itself, and the DocuSign Certificate of Completion associated with the Lending Agreement, demonstrates

6

that Plaintiff personally accepted and signed the document. *See* **Exhibit 3**, Declaration of Matt Dawson, ¶¶ 2-15. The Certificate of Completion generated by DocuSign shows that GoodLeap, from its email address loandocs@goodleap.com, e-mailed the Loan Agreement to Plaintiff at his personal email address, kbjzhansen@comcast.net, at 5:05:31 PM on July 7, 2021. Dawson Decl. ¶ 14; Ex. 2. Plaintiff opened the document to view it at 6:13:32 PM on July 7, 2021, and signed the document at 6:19:40 PM on July 7, 2021. Dawson Decl. ¶ 15; Ex. 2. The Loan Agreement also contains Plaintiff's unique information that could only have been provided directly by Plaintiff. Specifically, the Loan Agreement includes Plaintiff's bank account information. *See* Ex. 1 at 19; Dawson Decl. ¶ 17.[4] Plaintiff would have had to list this information, not GoodLeap, and GoodLeap did not collect Plaintiff's bank account information through any other document. Dawson Decl. ¶ 17. The unique identifying information contained in the Loan Agreement, and the audit trail contained in the DocuSign Certificate of Completion, show that Plaintiff personally executed and agreed to be bound by the Loan Agreement and its arbitration requirement.[5]

Second, the parties' Loan Agreement contains an exchange of valuable consideration. *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1211 (10th

---

[4] The Loan Agreement attached to this Motion redacts Plaintiff's confidential bank account information to protect his privacy.

[5] After the Loan Agreement was executed, GoodLeap delivered a Welcome Letter to Plaintiff providing a "Loan Closing Certificate" that provides the general terms of the loan (e.g. total loan amount, loan start date, first payment date, and APR), and TILA disclosure statement showing the borrower's final APR and other terms. Dawson Decl. ¶ 16. Moreover, Paragraph 15 of the Loan Agreement contains an arbitration provision. Ex. 1 at ¶ 15. The arbitration provision includes an ability to opt-out. A borrower may opt out of mandatory arbitration for claims related to the Loan Agreement within 15 days of executing the Agreement if he or she provides written notice to GoodLeap. Plaintiff did not submit written notice of any desire to opt out of the arbitration provision. Dawson Decl. ¶ 19.

Cir. 2016) ("where the agreement to arbitrate is integrated into a larger unitary contract, the consideration for the contract as a whole covers the arbitration clause as well.") (quoting *Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438, 453 (2d Cir. 1995)) In addition to the consideration provided by the terms of the Agreement, the arbitration provision includes a mutual promise to arbitrate. Ex. 1 at § 15. This mutual promise constitutes consideration to support the arbitration provision.

### B.  This Dispute Falls Within the Scope of the Arbitration Agreement

The Tenth Circuit applies the following test when determining whether an issue falls within the scope of an arbitration clause:

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. *Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.*

*Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014) (emphasis in original) (quoting *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Numerous courts within the Tenth Circuit and elsewhere have concluded that, as here, an arbitration clause applying to disputes "arising under" or "in connection with" the agreement

constitutes a broad arbitration clause. *See, e.g., Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir.2000) (explaining that arbitration clause stating "all disputes or controversies arising under or in connection with this Agreement ... will be settled exclusively by arbitration" was "the very definition of a broad arbitration clause" (omission in original)); *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir.1999) (stating that arbitration clause covering "[a]ny controversy, claim, or breach arising out of or relating to this Agreement ... is a 'broad' one"); *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 225–27 (2d Cir. 2001) (noting that phrase "[a]ny dispute arising from the making, performance or termination of this [agreement]," while containing limiting language, was "a broad arbitration clause"); *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,* 58 F.3d 16, 20 (2nd Cir.1995) (explaining that phrase "'[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause").

Here, the arbitration agreement between GoodLeap and Plaintiff states that "**[a]ll claims and disputes arising out of or relating to this Agreement** . . . **shall be resolved by binding arbitration on an individual basis.**" Ex. 1 at §15 (emphasis in original). On its face, and in line with the Tenth Circuit's evaluation of nearly identical arbitration clauses, this clause is "the very definition of a broad arbitration clause." *Brown*, 220 F.3d at 1184. As a broad arbitration clause, a "presumption of arbitrability" attaches to all collateral matters, including all of Plaintiff's causes of action under the CCPA, TILA, and EFTA. *Sanchez*, 762 F.3d at 1146. Other courts in this jurisdiction have similarly ordered arbitration of these same statutory causes of action where an arbitration clause was considered broad. *See Goodwin v. H.M. Brown & Assocs., Inc.*, No. 10-cv-01205-PAB-MEH, 2011 WL 820025, at *5 (D. Colo. March 2, 2011); *Gibson v. TT of*

*Woodmen, Inc.*, No. 12-cv-00002-CMA-MEH, 2012 WL 957658, at *1, 4 (D. Colo. Feb. 29, 2012).

Because Plaintiff's claims expressly fall within the broad scope of the parties' arbitration agreement, this Court should honor the parties' agreement and order arbitration of all of the above claims.

### C. The Court Should Dismiss this Case

Where, as here, all of the claims between a plaintiff and defendant are arbitrable, "the majority of federal courts hold that a case may be dismissed, rather than stayed." *American Fam. Mutual Ins. Co. v. Tamko Building Prods. Inc.*, 178 F.Supp.3d 1121, 1129 (D. Colo. 2016) (citing numerous cases). "Although the Tenth Circuit has not addressed this issue directly, it has intimated that a district court may dismiss when all claims are arbitrable and the movant specifically requests dismissal rather than a stay." *Hickey v. Brinker Int'l Payroll Co., L.P.*, No. 13-cv-00951-REB-BNB, 2014 WL 622883, at *5 (D. Colo. Feb. 18, 2014) (citing *Armijo v. Prudential Ins. Co. v. America*, 72 F.3d 793-97 (10th Cir. 1995)).

Courts in this District have followed this commonsense approach and dismissed cases where the parties agreed to arbitrate all claims, and where the movant requests dismissal, "despite the seemingly mandatory language" of 9 U.S.C. § 3 to stay the matter until arbitration is completed. *Condor Energy Technology, LLC v. Baker Hughes Oilfield Operations, Inc.*, No. 16-cv-1912-WJM-CBS, 2016 WL 11744214, at *6 (D. Colo. Nov. 29, 2016); *Turner v. Chipotle Mexican Grill, Inc.*, No. 14-cv-02612-JLK, 2018 WL 11314701, at *6 (D. Colo. Aug. 3, 2018); *Hickey v. Brinker Int'l Payroll Co., L.P.*, No. 13-cv-00951-REB-BNB, 2014 WL 622883, at *5 (D. Colo. Feb. 18, 2014); *Goodwin*, 2011 WL 820025 at *5 (ordering arbitration and

administratively closing case pursuant to D.C.COLO.LCivR 41.2, with leave to reopen for good cause shown, and eventually dismissed without prejudice). Reviewing authority from other Circuits, these Colorado courts have explained that the rule in 9 U.S.C. § 3 "was not intended to limit dismissal of a case in proper circumstances." *Turner*, 2018 WL 11314701 at *6 (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); citing *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (holding that Section 3 of the FAA does not preclude dismissal when all of plaintiff's claims are barred by an arbitration clause)).

As explained above, all of the issues between Plaintiff and GoodLeap are subject to the parties' expansive arbitration agreement. Instead of merely staying this matter, GoodLeap asks the Court to dismiss this case so that the parties may resolve this matter through arbitration as they contractually pledged to do.

## CONCLUSION

In light of the strong state and federal policies favoring arbitration, and given the existence of a valid and enforceable arbitration agreement covering all of Plaintiff's claims, the Court should compel the parties to arbitrate this matter and dismiss the case.

Dated:  November 10, 2022            Respectfully submitted,

/s/     *Blake A. Gansborg*
Blake A. Gansborg #50585
Christopher T. Carry #48745
Nelson Mullins Riley & Scarborough LLP
1400 Wewatta Street, Suite 500
Denver, CO  80202
Telephone: (303) 583-9900
Facsimile: (303) 583-9999
Email: blake.gansborg@nelsonmullins.com
        chris.carry@nelsonmullins.com
*Attorneys for Defendant GoodLeap LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of November, 2022, I electronically filed the **MOTION TO COMPEL ARBITRATION AND DISMISS PROCEEDINGS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.  I further certify that I have mailed the foregoing to the following parties:

Daniel J. Vedra
VEDRA LAW LLC
1444 Blake Street
Denver, CO 80202
303-937-6540
dan@vedralaw.com

*Attorney for Plaintiff*


    *s/Blake A. Gansborg*
of Nelson Mullins Riley & Scarborough, LLP