Exhibit 1

DocuSign Envelope ID: FAA265A2-21AF-4B12-9C5B-5D2D14B608CD

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



Our mission is to connect a world in which
**everyone can live sustainably.**

Inside this package is your payment agreement
for your upcoming home improvements.

Thank you for choosing us, and one of our trusted
partners, to help you upgrade your home.

d467a5e5-bbc1-4d4a-8c6c-ca98f54f0aa1

good

for life, earth, and prosperity

DocuSign Envelope ID: FAA265A2-21AF-4B12-9C5B-5D2D14B608CD

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



Key Loan Terms

In this package, you will be signing your loan agreement with the following terms:

| Loan Amount | Loan Term | Interest Rate/APR |
|---|---|---|
| **$54,841.60** | **25 years** | **2.99%** |

DS
**KH**

Borrower's Initials          Co-Borrower's Initials

| Initial Payment | Your initial GoodLeap monthly payment for the first 18 months. |
|---|---|
| **$196.12 (e) / month** | |

| Adjusted Monthly Payment | Your adjusted GoodLeap monthly payment starting in month 19 until the end of your loan term if no voluntary payments are made in the first 18 months. |
|---|---|
| **$266.58 (e) / month** | Your loan is designed to re-amortize at the end of the 18th month. If you choose to make voluntary prepayments on your loan equal to 26% of your loan amount before the end of the 18th month, your loan payment will stay approximately the same as your initial monthly payment throughout the life of your loan. If you do not make a voluntary prepayment, your monthly loan payment will go up to the adjusted amount. |

"(e)" means "Estimate"

Your loan start date is the date we fund the loan to your Contractor. Interest on your loan begins to accrue on the loan start date.

Your first payment date will be due approximately 60 days after your loan start date. Your first payment date may be before your system has been granted Permission to Operate from your utility company.

Borrower's signature: _DocuSigned by:_
**Ken Hansen**
CC2F52E8C25D40F...

Date: Jul 7, 2021

Co-Borrower's signature: _____   Date: _____

If you have any questions about your loan or your loan terms after reviewing this package, please call GoodLeap at 1 (844) 910-0111.

DocuSign Envelope ID: FAA265A2-21AF-4B12-9C5B-5D2D14B608CD

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

**GOODLEAP**

8781 Sierra College Blvd, Roseville, CA 95661   Phone: 1-877-290-9991

## Truth in Lending Disclosure Statement

**Borrower:** Ken Hansen
**Co-Borrower:**
**Email:** Kbjzhansen@comcast.net
**Phone:** (303) 707-1047
**Loan Agreement Number:** 21-11-055739

**Residence Address:**
5862 S LOGAN CT
CENTENNIAL, CO 80121-1120

**Date of the Agreement:** Jul 7, 2021

| **ANNUAL PERCENTAGE RATE** The cost of your credit as a yearly rate | **FINANCE CHARGE** The dollar amount the credit will cost you | **Amount Financed** The amount of credit provided to you or on your behalf | **Total of Payments** The amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| **2.99%** | **$23,664.33 (e)** | **$54,841.60** | **$78,505.93 (e)** |

| Monthly Payment Schedule | | |
|---|---|---|
| **Number of Payments** | **Amount of Payments** | **When Payments Are Due** |
| 1 | $196.12 (e) | Monthly, beginning 2 months after the Loan Start Date **(e)** |
| 16 | $196.12 (e) | Monthly, beginning 3 months after the Loan Start Date **(e)** |
| 281 | $266.58 (e) | Monthly, beginning 19 months after the Loan Start Date **(e)** |
| 1 | $262.91 (e) | **300 months after the Loan Start Date (e)** |

"(e)" means an estimate

| Autopay – Variable Rate: | The Annual Percentage Rate (APR) and Monthly Payment Schedule above are based, in part, on the Autopay payment option you selected in the loan application.  You may change your Autopay payment option at any time.  Selecting Autopay payments provides a 0.50% interest rate/APR discount and a lower monthly payment.  Cancelling Autopay payments will raise your interest rate/APR by 0.50% and will result in a higher monthly payment. |
|---|---|
| Security: | You are giving a security interest in the personal property you are purchasing in this transaction and your rights under any related agreement. |
| Prepayment: | If you pay off your loan early, you will not have to pay a penalty. |
| Contract Reference: | See your Loan Agreement ("Agreement") for any additional information about nonpayment, default, and any required repayment in full before the scheduled date. |

| Itemization of Amount Financed | |
|---|---|
| **Itemization of the amount financed:** | $54,841.60 |
| Amount given to you directly: | $0 |
| Amount paid to others on your behalf: | $54,841.60 to Telt Ventures, LLC |

The "Loan Start Date" is the date we send funds to your contractor.  This date must be within 180 days of the initial application date.

This loan is assumable upon the sale of the property to a new owner, if the new home owner qualifies under GoodLeap's underwriting guidelines.

The Payment Schedule shown above assumes that you make no voluntary prepayments on your Loan.  However, we have designed the Loan so that it will re-amortize at the end of the 18th month after your Loan Start Date.  As a result, if you make all scheduled payments on time and also make sufficient voluntary prepayment(s) to reduce your total loan amount to the "Target Balance" by the "Target Balance Date" described in your Agreement, your payments from month 19 through the end of your term will be approximately equal to your initial monthly payment stated above.

The Payment Schedule shown above assumes you make no changes to your Autopay payment option. For example, your 25 year loan of $54,841.60 with Autopay payments will have an interest rate/APR of 2.99% and an initial monthly payment of $196.12 (e) per month. Your 25 year loan of $54,841.60 without Autopay payments will have an interest rate/APR of 3.49% and an initial monthly payment of $207.62 (e) per month.

DocuSign Envelope ID: FAA265A2-21AF-4B12-9C5B-5D2D14B608CD
THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

By signing below, you acknowledge that you have read and received a complete copy of this disclosure to keep for future reference before you signed your Agreement.



Borrower's Signature: Ken Hansen

Date: Jul 7, 2021

Co-Borrower's Signature: _____ Date: _____

GoodLeap, LLC:

Matt Dawson, Co-Founder

DocuSign Envelope ID: FAA265A2-21AF-4B12-9C5B-5D2D14B608CD

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

**GOODLEAP**

8781 Sierra College Blvd, Roseville, CA 95661   Phone: 1-877-290-9991

## Loan Agreement

**Borrower:** Ken Hansen
**Co-Borrower:**
**Email:** kbjzhansen@comcast.net
**Phone:** (303) 707-1047
**Loan Agreement Number:** 21-11-055739

**Residence Address:**
5862 S LOGAN CT
CENTENNIAL, CO 80121-1120

**Date of the Agreement:**  Jul 7, 2021

This document provides a Summary of the terms and conditions of your Loan.

| SUMMARY OF LOAN TERMS AND PAYMENTS | | | | | | |
|---|---|---|---|---|---|---|
| 25 YEARS | $54,841.60 | $196.12 (e) | 2.99% | $39,693.30 (e) | Mar 05, 2023 (e) | $266.58 (e) |
| LOAN TERM | TOTAL LOAN AMOUNT | INITIAL MONTHLY PAYMENT | INTEREST RATE / APR | TARGET BALANCE | TARGET BALANCE DATE | ADJUSTED MONTHLY PAYMENT* |

(e) means estimate
* Adjusted monthly payment assumes that no prepayment was made and the Target Balance was not met by the Target Balance Date, and you do not change the Autopay payment election.

| SYSTEM INFORMATION |
|---|

Installation Contractor: Telt Ventures, LLC

Purchased Goods under this Loan Agreement will be detailed in your Home Improvement Agreement with your Contractor. By initialing below, you confirm receipt of such Home Improvement Agreement.

Borrower's Initials:   KH      Co-Borrower's Initials:  _____

| LOAN INFORMATION |
|---|

**Loan Start Date and First Payment Date**

The "Loan Start Date" and "First Payment Date" will be finalized in your Loan Closing Certificate (Exhibit A), an example of which is fully incorporated herein. This certificate will be sent to you following disbursement of the loan proceeds.

**The "Loan Start Date" will be the date that we disburse loan proceeds to your Contractor.**

**The "First Payment Date" will be set by us as follows: If the Loan Start Date is on the 1st through 28th, it will be on the corresponding date two months later (i.e., if June 15th, then August 15th); if the Loan Start Date is on the 29th through 31st, it will be on the first day of the first month following 60 days after the Loan Start Date (i.e., if June 30th, then September 1st). You are obligated to make all loan payments starting on your First Payment Date, regardless of the utility company granting permission to operate.**

Borrower's Initials:   KH      Co-Borrower's Initials:  _____

Interest will accrue on the loan amounts actually disbursed, with the first accrual starting on the first calendar day following the Loan Start Date. Thus, the longer your First Payment Date is from the Loan Start Date, the more interest you will pay. If you wish to reduce the amount of interest that accrues, you can begin making payments earlier, at any time you choose after the Loan Start Date. However, interest will continue to accrue until all amounts owed under this Agreement are paid in full.

Your loan application was approved for a period of 180 days from the initial credit report date. If the Loan Start Date does not occur within 180 days from the initial credit report date, we will request a new credit report from the credit bureaus, to make sure that you continue to qualify for the same loan terms. This may impact your credit score.

**Tax Credit**

You may be eligible for a federal solar investment tax credit. You acknowledge that eligibility for this tax credit is not guaranteed. In order to realize the benefits of the solar investment tax credit, you must have federal income liability that is at least equal to the value of the credit. We are not financially responsible for your receipt of any tax credits related to the Solar Equipment. We do not provide tax advice and nothing in this Loan Agreement is intended to be used as tax advice. To determine your eligibility for any federal solar investment tax credit, you should make an independent assessment or consult with your tax advisor.

**Target Balance Payments and Initial Monthly Payments**

You are not required to make prepayments. However, you acknowledge that in order to avoid an increase in your Initial Monthly Payment, you must make one or more voluntary prepayments equal to 26% of your Total Loan Amount by your Target Balance Date. If you pay more than 26% of your Total Loan Amount, your monthly payments will be adjusted to a lower amount than the Initial Monthly Payment. If you do not make any prepayments, or if your prepayments are less than 26% of your Total Loan Amount, your monthly payments will be adjusted to a higher amount than the Initial Monthly Payment. You also understand that your Initial Monthly Payments will not be fully amortizing, but your new Monthly Payment after the Target Balance Date will be fully amortizing.

Borrower's Initials:   KH      Co-Borrower's Initials:  _____

**Security Agreement**

You authorize us to file on your behalf any documentation, including but not limited to a copy of this Agreement, a UCC financing statement and/or a county fixture filing required to perfect our security interest in the Collateral to the extent required by applicable law, as outlined in Section 6 of this agreement.

**FOR MASSACHUSETTS BORROWERS ONLY: You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right.**

| LOAN AGREEMENT |
|---|

DocuSign Envelope ID: FAA265A2-21AF-4B12-9C5B-5D2D14B608CD

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

THIS AGREEMENT IS LEGALLY BINDING AS OF AND FOLLOWING THE DATE OF THIS AGREEMENT. IN THIS AGREEMENT, THE WORDS "YOU" AND "YOUR" REFER TO BORROWER, CO-BORROWER AND BORROWER'S AND/OR CO-BORROWER'S PERMITTED ASSIGNEES, AND THE WORDS "LENDER," "WE," "US" AND "OUR" REFER TO GOODLEAP OR ITS ASSIGNEES. THIS AGREEMENT SUPERSEDES ANY PRIOR AGREEMENT BETWEEN YOU AND GOODLEAP CONCERNING THE SAME SUBJECT MATTER.

**1.    INTRODUCTION.**  The parties (each, a "Party" and collectively, "Parties") to this Agreement are you and GoodLeap, LLC ("GoodLeap"). Your solar installation contractor ("Contractor") has provided us with a copy of a signed home improvement agreement between you and the Contractor (the "Home Improvement Agreement") under which the Contractor will install solar panels, inverters, raceways, wiring, electrical and mechanical connections, metering, monitoring and/or other distributed generation interconnect equipment ("Solar Equipment") and may, in addition or instead, install new roofs and related roofing materials, battery storage equipment, electrical vehicle power charging equipment, and thermostat equipment, and provide landscaping services to accommodate the solar system (together with the Solar Equipment, "Purchased Goods") at your home ("Residence") located at the Residence Address listed above.

**2.    PROMISE TO PAY.**  For value received, you promise to pay to GoodLeap and/or its assignees, the principal sum of the Total Loan Amount, with interest as set forth in Section 3 ("Interest and Payments") and any fees assessed in Section 4 ("Fees") below.

**3.    INTEREST AND PAYMENTS.**

**a.**    Payment Timing.  Your first Monthly Payment is due and payable on the First Payment Date (estimated on the Truth in Lending Disclosure and finalized on the Loan Closing Certificate).

**b.**    Payment Application.  If you make a payment that satisfies all current and past due installments, any additional payment will be allocated as set forth in the following sentence, but that additional payment will not change the due date for any payment that comes due in the future. To the extent permitted by applicable law, all payments or prepayments will be applied first to accrued interest, then to unpaid principal in the inverse order of maturity (last to first), and then to fees or costs payable to us under this Agreement.

**c.**    Accrual.  Interest will accrue on the loan amounts actually disbursed, with the first accrual starting on the first calendar day following the Loan Start Date. Interest will continue to accrue until all amounts owed under this Agreement are paid in full.  Unpaid interest will not be added to the principal balance.  To the extent permitted by applicable law, interest on your loan will be calculated on a 30/360 basis. For any partial month, interest accrues based on the actual number of days your loan is outstanding for such partial month.  If you make your loan payments late, more interest will accrue, and the total finance charge you pay over the life of your loan will be higher. If you make your loan payments early, less interest will accrue, and the total finance charge you pay over the life of your loan will be less. Interest accrues between the Loan Start Date and your First Payment Date, and the longer the period of time between the Loan Start Date and your First Payment Date, the more interest will accrue.  If you wish to reduce the amount of interest that accrues before your First Payment Date, you can begin making loan payments any time after the Loan Start Date. The amount of your final loan payment will change based on when you pay your monthly loan payments and whether you make any voluntary prepayments.

**d.**    Interest rate and Monthly Payment Amounts.  Your interest rate may vary depending upon only whether you cancel or add Autopay payments during the term of your loan, with a 0.50% interest rate discount for Autopay, or removal of that discount without Autopay. The monthly payments you must make, assuming you make all payments in full and on time and do not change your Autopay payment election, are set forth in your Loan Closing Certificate based upon your prior Autopay election. If there is a change to your Autopay status the new interest rate and accrual will be reflected in your monthly payment for the next applicable billing cycle.

**e.**    Target Balance / Target Balance Date / Initial Monthly Payment / New Monthly Payment: After the Target Balance Date, your loan will re-amortize to reflect your outstanding principal balance on the Target Balance Date and your new Monthly Payments will be adjusted to an amount required to cause the full repayment of the Loan by the Maturity Date.  You understand that your Initial Monthly Payments will not be fully amortizing, but your new Adjusted Monthly Payments after the Target Balance Date will be calculated as follows:

(i)    If you do not make any voluntary prepayments before the Target Balance Date, then your new Monthly Payment will be the Adjusted Monthly Payment.

(ii)    If you make voluntary prepayments but such prepayments do not reduce your Total Loan Amount equal to or below the Target Balance by the Target Balance Date, then your new Monthly Payment will be an amount greater than your Initial Monthly Payment but less than the Adjusted Monthly Payment.

(iii)    If you make voluntary prepayments and such prepayments reduce your Total Loan Amount equal to the Target Balance by the Target Balance Date, then your new Adjusted Monthly Payment will be approximately equal to your Initial Monthly Payment.

(iv)    If you make voluntary prepayments to reduce your unpaid Total Loan Amount to less than the Target Balance by the Target Balance Date, then your new Adjusted Monthly Payment will be less than the Initial Monthly Payment reflected in the Loan Summary above for the remainder of the Term.

**f.**    Maturity Date.  Unless your loan is due earlier and payable as provided in this Agreement, your loan will mature on the Maturity Date.  On the Maturity Date, you agree to pay in full any unpaid amounts payable under this Agreement.

**g.**    Payment Method.  You may pay by Autopay or check. If you chose to pay by Autopay in your application, you agree to complete and submit the Automatic Payment Authorization Form (the "Autopay Authorization"). If you chose to pay by check, include your Loan Agreement Number on your check and mail it to GOODLEAP, PO BOX 4387, Portland, OR 97208.  You may change your payment method by following the instructions in the Autopay Authorization.

**h.**    Prepayment. You may prepay your loan at any time without penalty.

**4.    FEES.**  We will also charge you the following fees to the extent permitted by applicable law.

**a.**    Insufficient Funds Fee. Unless prohibited by law, you will be charged a non-refundable fee of $15 for each failed electronic or check payment attempt. Your bank may assess its own fee in addition to the fee we assess.

**b.**    Fee for the Removal and Refiling of Our County Fixture Filing.  See Section 6 below for further information.

**c.**    Transfer Fee. See Section 6 below for further information.

**d.**    Alternative Payment Convenience Fee.  Where permitted by law, if you request that we accept a payment via an alternative source such as a debit card, you may be charged a convenience fee, in an amount that we will disclose prior to your election to pay by such alternative method.

**5.    ADDITIONAL OBLIGATIONS AND REPRESENTATIONS.**

**a.**    Collateral. To the extent permissible by law, you irrevocably grant us a limited power of attorney with full power of substitution and re-substitution, to sign any documents and perform any acts, in your name and on your behalf, for the exclusive purpose of exercising our rights with respect to the Collateral under this Agreement. You also agree not to pledge, mortgage, encumber or otherwise permit the Collateral at any time to be subject to any lien or encumbrance that is superior to our security interest. See Section 6 below for further information on what constitutes eligible Collateral under this Agreement.

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

b. <u>Ownership Confirmation</u>.  You represent and covenant that: (1) the Residence is your primary residential home dwelling or a second/vacation home and is not a rental property, or any business or commercial establishment or used as such; (2) you, or a trust controlled by you, are the fee simple owner of the Residence and the Collateral; (3) you are not, and will not, be in breach of your Home Improvement Agreement.

c. <u>Collateral Access</u>.  You agree to provide us or our designees after receiving reasonable notice, with access to the Residence for the purposes of (1) inspecting the Purchased Goods until this Agreement terminates or, (2) in the case of a foreclosure on the Collateral, removing the Collateral from the Residence.

d. <u>Personal Property</u>.  You and we both expressly intend that no portion of the Collateralized Goods will constitute a "fixture" attached to any real property, and that the Collateralized Goods will be removable personal property. You also agree not to take any action that might cause the Collateralized Goods to be treated as real property or as fixtures to real property. You agree that we may make a fixture filing, if we choose, provided that you and we agree that we may enforce rights in the Collateralized Goods under the Uniform Commercial Code and not under state real estate or mortgage law.

e. <u>Installation and Maintenance</u>.  You will take all steps necessary to enable the installation and proper functioning of the Purchased Goods to be completed in accordance with the Home Improvement Agreement and to be maintained in accordance with any Operations and Maintenance Agreement. You agree to keep the Purchased Goods in good working order and in compliance with manufacturing specifications, the operating and maintenance manuals, warranty requirements provided by your Installation Contractor and, if applicable, your Operations and Maintenance Contractor, and all applicable law, and not to remove or modify the Purchased Goods without our prior written consent.  You agree to maintain at all times an internet connection sufficient to ensure that monitoring data for the Solar Equipment can be fully transmitted, and consent to GoodLeap receiving such monitoring data, directly or through Contractor.  You will be responsible for the structural integrity of the location where the Purchased Goods are installed, including structural or electrical modifications necessary to prepare your Residence for the Purchased Goods.

f. <u>Property Conditions</u>.  You agree that GoodLeap is not responsible for any known or unknown Residence conditions.  GoodLeap is not responsible and bears no liability for the malfunctioning of existing electrical equipment at the Residence, including but not limited to the main electrical service panel, any major electrical devices, or any other fuses or similar devices.

g. <u>Taxes</u>. You agree to pay, when due, your taxes, assessments, or other similar fees. If you do not pay these taxes or other fees when due, we may pay them on your behalf and add the amount we pay to the principal of our loan under this Agreement. In the event that we choose pay these taxes and/or other fees on your behalf, you agree to assist us in these efforts.  Tax obligations that you may be required to pay may include: (1) the assessed value and the property tax assessments associated with the Purchased Goods calculated in the year this Agreement is signed; (2) transaction privilege taxes; and (3) any obligation to transfer tax credits or tax incentives of the Purchased Goods to any other person.

h. <u>Required Insurance</u>. To the extent permissible by law, you agree to maintain and pay any deductibles under a homeowners' insurance policy or equivalent insurance policy reasonably acceptable to us covering the Purchased Goods in an amount equal to the full replacement and installation cost of the Purchased Goods or the outstanding balance of the loan. If there is a payout under the property coverage for damage to the Purchased Goods, you agree to deliver those insurance proceeds to us, and we will apply those proceeds to the loan in the order of priority set forth in Section 3b. of this Agreement.

i. <u>Credit Inquiries</u>. You authorize us to obtain a credit report on you for any legal purpose in connection with this loan, including any update, extension of credit, review, or collection of this loan. Upon request, we will tell you the name and address of the credit bureau furnishing any report.

j. <u>Bankruptcy</u>. You represent that you are not contemplating bankruptcy and that you have not consulted with an attorney regarding bankruptcy in the past six months. Any communication with us required or permitted under the Federal Bankruptcy Code must be in writing, must include your loan number, and must be sent to us at the address for GoodLeap.

**6.   GRANT OF SECURITY INTEREST IN COLLATERAL.**  As consideration for the loan we are providing and to secure your obligations under this Agreement, you hereby grant to us a security interest in the following property (collectively "Collateral"):

a. all Purchased Goods excluding the roof and related roofing materials, if any (such Purchased Goods which excludes the roof and related roofing materials are referred to in this Agreement as "Collateralized Goods");

b. all accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to the Collateralized Goods;

c. all proceeds from warranty claims related to the Collateralized Goods, the Home Improvement Agreement and any Operations and Maintenance Agreement;

d. all your rights, title, interests, and remedies under all agreements and other documentation relating to the Collateralized Goods (including, without limitation, the Home Improvement Agreement, and Operations and Maintenance Agreement);

e. all consideration received from the collection, sale or other disposition of the Collateralized Goods, including any payment received from any insurer arising from any loss, damage or destruction of any Collateralized Goods and any other payment received as a result of possessing any Collateralized Goods, or any other proceeds of Collateralized Goods.

You authorize us to file on your behalf any documentation, including but not limited to a copy of this Agreement, a UCC financing statement and a county fixture filing to perfect our security interest in the Collateralized Goods (in case a third party seeks to classify the panels as a fixture). If you are refinancing your home, upon request, we may agree to lift our county fixture filing, on the Solar Equipment for a limited period of time, provided we will be able to refile upon closing of the mortgage refinancing.  A $200 fee will be assessed for the removal and refiling of our county fixture filing.  If you sell your home, your loan must be paid in full to remove the UCC financing statement and county fixture filing. The actual costs incurred, if any, of removing a UCC financing statement or country fixture filing will be added to your payoff amount if you elect to pay your loan in full before the end of the loan term. Alternatively, this loan agreement may be transferred to the new home owner if the new home owner qualifies for the loan product as outlined in Section 12.  A $300 transfer fee will be assessed for any transferred loan agreements.

**7.   INDEMNIFICATION.**  You agree to indemnify, defend and hold harmless us and our affiliates against any loss, liability, or damage that arises out of or relates to the transactions contemplated by this Agreement.

**8.   DEFAULT.** You will be in default under this Agreement if any of the following occurs:

a. you fail to make any payment under this Agreement within fifteen (15) days of the date such payment is due;

b. you fail to perform any of your obligations under this Agreement and you fail to cure such failure to perform to our reasonable satisfaction within thirty (30) days after receiving notice from us of your failure to perform;

c. you terminate the Home Improvement Agreement without our consent after any loan proceeds have been disbursed;

d. you remove, modify, sell or otherwise transfer the Collateral without our approval;

e. any representation made by you on your loan application or this Agreement is false in any material respect when made;

f. any of the following occurs (each a "Bankruptcy Event"): (1) you make an application for the appointment of a receiver, trustee or custodian or a receiver, trustee or custodian is appointed for you or a majority of your assets; (2) you initiate or consent to any legal proceedings under the Bankruptcy Code, or equivalent law providing for the relief of debtors; (3) you make an assignment for the benefit of creditors; or (4) you have a petition in bankruptcy or similar relief of debtors filed against you, which is not withdrawn or discharged within thirty (30) days of being filed.

DocuSign Envelope ID: FAA265A2-21AF-4B12-9C5B-5D2D14B608CD

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

**9.   REMEDIES.** Our remedies if you default on this Agreement include the following (to the fullest extent permitted by law):

**a.**   _General._  In the event that you are in default under this Agreement, we may:

   (1)   _Accelerate your Loan:_  We would declare our loan immediately due and payable. This requires you to pay in full the unpaid principal amount of the loan, all accrued interest, and any other amounts due under this agreement.  Your loan will become immediately due and payable to us under a Bankruptcy Event, regardless of whether or not we take any action.

   (2)   _Provide a report to the credit bureaus detailing any late payments, missed payments or other defaults:_  As required by law, you are hereby notified that a negative report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of this Agreement.

   (3)   _Disable / Foreclose on the Collateral:_ (and exercise any other rights with respect to the Collateral that we have under this Agreement or applicable law). This includes disabling the Equipment remotely or by entering upon your property; and/or entering upon your property and removing and taking possession of the Collateral and then selling, leasing, or otherwise disposing of the property.

   (4)   _Pursue all remedies available under applicable law:_  Including those of a secured creditor as permitted by applicable law.

   (5)   _Stop making credit extensions under your loan:_  Including ceasing any funding that may be pending on your loan as permitted by applicable law

**b.**   _Cost Reimbursement; Application of Proceeds._  Unless otherwise prohibited by state law, you are to promptly reimburse us, with interest, for all costs and expenses incurred in exercising our remedies related to this Agreement. If we choose to foreclose on the Collateral, we will apply any cash proceeds in the order of priority set forth in Section 3b. of this Agreement and then to you or as a court may otherwise direct.

**c.**   _Deficiency Judgment._  To the fullest extent permitted by law we may require that you pay any amounts payable by you under this Agreement less any proceeds that we realize from our exercise of our remedies under this Agreement.

TO THE FULLEST EXTENT PERMITTED BY LAW, YOU ARE PERSONALLY LIABLE FOR ALL AMOUNTS PAYABLE UNDER THIS AGREEMENT. WE ARE NOT REQUIRED TO FORECLOSE ON THE COLLATERAL BEFORE INITIATING PROCEEDINGS AGAINST YOU AND YOUR ASSETS.

Our rights under this Agreement are cumulative and we may exercise these rights at any time if you default. In the event that we exercise any of our rights or remedies under this Agreement, you will continue to be in default until such time that you pay to us all amounts due and payable to us and you have cured any and all defaults. OUR FAILURE TO TAKE ANY ACTION OR DELAY TAKING ANY ACTION RELATED TO YOUR DEFAULT, OR SIMILAR OR UNRELATED DEFAULT, DOES NOT WAIVE, OR IMPLY A WAIVER OF ANY OF OUR RIGHTS UNDER THIS AGREEMENT.

**10.   TERMINATION.** We may terminate this Agreement during any period in which a Force Majeure Event prevents, limits or otherwise impairs our ability to perform our obligations under this Agreement. A Force Majeure Event means any circumstance beyond the Parties' reasonable control; including but not limited to any act of nature, war, terrorism, rebellion, labor dispute, work stoppage, civil disorders, act of government, or any other similar major cause.  This Agreement will terminate automatically if the final loan disbursement does not occur within one hundred eighty (180) days of the date you most recently received credit approval by us to enter into this Agreement.  No delay in our exercise of the foregoing termination rights shall constitute a waiver of our continuing rights to terminate the Agreement.  In addition, you may terminate this Agreement at any time prior to our disbursement of the loan proceeds, by sending advance written notice to us.  The terms of this Agreement that would, by their express nature, survive the termination of this Agreement will survive and be enforceable under this Agreement. Upon termination of this Agreement, our security interest in the Collateral will terminate.

**11.   NOTICES AND OTHER INFORMATION.** You agree to notify us if your name, email, or mailing address changes.

**12.   ASSIGNMENT/REGISTERED FORM.** You may not assign or transfer your rights or obligations under this Agreement without our prior written consent, provided, that if you sell your home, you may transfer the loan obligations to the new home owner if (a) they meet our credit and underwriting criteria in place at that time by notifying us in writing at least thirty (30) days in advance using the contact information noted at the top of this Agreement, and (b) the warranties and operations and maintenance service obligations (if any) pertaining to the Purchased Goods are transferred to the new home owner. We reserve the right to not allow assignment of the loan in cases where you are in default under this Agreement. You agree that we may assign or transfer all or a portion of this Agreement and the related documents to any third party or affiliate. GoodLeap or its agent, acting as a non-fiduciary agent of the Borrower, shall maintain, a register within the meaning of U.S. Treasury Regulations Sections 5(f).103-1(c) on which it will record the names and addresses of each owner and their rights to principle and stated interest.  Any transfer of all or a portion of a beneficial interest hereunder shall be recorded on such register.  All parties to this agreement or their agents may treat each person or entity whose name is recorded in such register pursuant to the terms hereof as the applicable participant for all purposes under this Agreement.  The register shall be available for inspection from time to time by any party hereto upon reasonable prior notice to GoodLeap or any of its agents. YOU AUTHORIZE US TO PROVIDE TO A THIRD PARTY OR AFFILIATE ANY INFORMATION THAT THEY MAY REQUEST IN CONSIDERING OR IMPLEMENTING A PURCHASE OF OUR RIGHTS UNDER THIS AGREEMENT.   Arizona borrowers only: we will notify you if the entity responsible for allowing the assignment of your loan changes.

**13.** LIMITATION OF LIABILITY.  TO THE EXTENT PERMITTED BY APPLICABLE LAW, OUR LIABILITY TO YOU UNDER THIS AGREEMENT, IF ANY, SHALL BE LIMITED TO DIRECT, ACTUAL DAMAGES ONLY. YOU AGREE THAT IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR CONSEQUENTIAL, INCIDENTAL, PUNITIVE, EXEMPLARY, SPECIAL OR INDIRECT DAMAGES.

**14.   GOVERNING LAW AND MISCELLANEOUS.**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

Except for the Arbitration agreement below, this Agreement shall be governed by federal law and, to the extent state law applies, the substantive laws of the state where the Residence is located. If any provision of this Agreement cannot be enforced, the rest of this Agreement will stay in effect. No amendment of this Agreement will be valid unless in writing and signed by both Lender and you (the Loan Closing Certificate shall not be deemed an amendment of this Agreement and is fully incorporated into this Agreement). This Agreement represents the entire agreement between the Parties regarding your loan.  Our rights under this Agreement shall inure to the benefit of our successors and assigns, and your obligations under this Agreement shall be binding upon your heirs, personal representatives and permitted assigns.

**15.   ARBITRATION AGREEMENT.**  All claims and disputes arising out of or relating to this Agreement (hereafter, "Dispute(s)") shall be resolved by binding arbitration on an individual basis. The arbitrator shall also decide any issues relating to the making, validity, enforcement, or scope of this arbitration agreement, arbitrability, defenses to arbitration including unconscionability, or the validity of the jury trial, class action or representative action waivers (collectively, "arbitrability" issues). YOU HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO GO TO COURT AND HAVE A TRIAL IN FRONT OF A JURY.  FURTHER, UNLESS YOU OPT OUT OF ARBITRATION, YOU ALSO AGREE TO WAIVE ANY RIGHT TO BRING OR PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION. The arbitrator shall have the authority to award any relief, including injunctive relief, which is available under applicable law. Each party shall bear the expense of its own counsel, experts, witnesses and preparation and presentation of proofs. However, the arbitrator may award you reasonable attorney's fees and costs if this is expressly authorized by applicable law. Upon request, we will pay a portion of the fees and expenses of the arbitrator and the administrative fees and expenses of

DocuSign Envelope ID: FAA265A2-21AF-4B12-9C5B-5D2D14B608CD

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

the arbitration. The arbitrator shall issue a written award describing the essential findings supporting the award. All hearings in the arbitration shall take place within the federal judicial district where the Residence is located; the arbitrator's award shall be final and judgment on the arbitrator's award may be entered by the federal District Court. The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules (the "Rules"). A copy of the JAMS Streamlined Arbitration Rules can be obtained from JAMS at https://www.jamsadr.com/rules-streamlined-arbitration or (800) 352-5267. The arbitrator shall be selected from the JAMS panel of neutrals and shall be a retired federal judge, a retired state appellate judge, or a retired state trial judge (in that order of preference). You agree that this agreement to arbitrate may be enforced by us or our affiliates, subsidiaries, or parents, and (g) each of their officers, directors, employees, and agents. This arbitration agreement is made pursuant to a transaction involving interstate commerce. The Federal Arbitration Act (9 U.S.C. §§1-16) (the "FAA") shall govern this agreement to arbitrate including all arbitrability issues. No state law respecting arbitrability issues shall govern this agreement to arbitrate. Subject to and without limiting the foregoing, federal law shall apply to all other issues that arise under federal law and applicable state law as set forth in Section 14 above shall apply to all other issues that arise under state law (without reference to a state's choice of law rules). YOU MAY OPT OUT OF ARBITRATION BY SENDING US WRITTEN NOTICE WITHIN 15 DAYS OF SIGNING THE AGREEMENT STATING THAT YOU WISH TO "OPT OUT OF THE AGREEMENT TO ARBITRATE DISPUTES." THE OPT-OUT NOTICE SHOULD BE SENT TO THE FOLLOWING ADDRESS: GOODLEAP, 8781 Sierra College Blvd., Roseville, CA 95661. If you do not opt out, but any part or parts of your agreement to arbitrate are unenforceable then GoodLeap and you agree that such specific part or parts shall be of no force or effect and shall be severed, but the remainder of this agreement to arbitrate shall continue in full force and effect. If, however, the entire agreement to arbitrate or your waiver of the right to participate in class, representative or to arbitrate injunctive relief claims is unenforceable then the agreement to arbitrate shall be of no force or effect.

JUDICIAL REFERENCE FOR CALIFORNIA BORROWERS. IF THE RESIDENCE IS IN CALIFORNIA AND YOU OPT-OUT OF ARBITRATION, GOODLEAP AND YOU AGREE THAT ANY DISPUTES WILL BE RESOLVED IN THE SUPERIOR COURT FOR THE COUNTY IN A GENERAL REFERENCE PURSUANT TO THE CALIFORNIA CODE OF CIVIL PROCEDURE ("CCP"), § 638(a). YOU ACKNOWLEDGE AND AGREE THAT IN A REFERENCE ACTION, ANY DISPUTE WILL BE HEARD BY A REFEREE AND NOT BY A SUPERIOR COURT JUDGE AND JURY AND HEREBY WAIVES HIS CONSTITUTIONAL AND STATUTORY RIGHTS TO HAVE A TRIAL IN FRONT OF A JUDGE AND JURY. The Referee shall be appointed pursuant to CCP § 640 in the absence of agreement on the selection. The Referee shall have the same qualifications as the arbitrator. Upon request, GoodLeap will pay your portion of the fees and expenses of the Referee.

NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, IF THE RESIDENCE IS IN CALIFORNIA AND YOU DO NOT OPT-OUT OF ARBITRATION, YOU MAY SEEK PUBLIC INJUNCTIVE RELIEF IN ARBITRATION TO THE EXTENT PERMITTED BY APPLICABLE LAW. IF, HOWEVER, ARBITRATION IS UNENFORCEABLE, IN WHOLE OR IN PART, THEN GOODLEAP AND YOU AGREE THAT SUCH DISPUTES WILL BE RESOLVED IN THE SUPERIOR COURT FOR THE COUNTY IN A GENERAL REFERENCE PURSUANT TO THE CALIFORNIA CODE OF CIVIL PROCEDURE ("CCP"), § 638(a). YOU ACKNOWLEDGE AND AGREE THAT IN A REFERENCE ACTION, ANY DISPUTE WILL BE HEARD BY A REFEREE AND NOT BY A SUPERIOR COURT JUDGE AND JURY AND HEREBY WAIVES HIS CONSTITUTIONAL AND STATUTORY RIGHTS TO HAVE A TRIAL IN FRONT OF A JUDGE AND JURY. The Referee shall be appointed pursuant to CCP § 640 in the absence of agreement on the selection. The Referee shall have the same qualifications as the arbitrator. Upon request, GoodLeap will pay your portion of the fees and expenses of either the arbitrator or the Referee, as the case may be, any your portion of any administrative fee that the arbitrator, referee or JAMS may require.

Nothing in Section 15 shall prejudice the right of either party to: (a) seek and obtain such provisional relief or remedies as shall otherwise be available judicially pending appointment of the arbitrator or referee (b) bring their Dispute in small claims court on an individual basis, (c) exercise such self-help remedies as are authorized by law or contract, or (d) pursue judicial foreclosure as set forth in Section 9.

BY PLACING YOUR INITIALS BELOW THIS NOTICE YOU CERTIFY THAT YOU HAVE READ AND AGREE TO SECTION 15 IN ITS ENTIRETY.

Borrower's Initials: _____ KH _____      Co-Borrower's Initials: _____

**16.   ECOA NOTICE.** The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (providing that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning this creditor is: The Federal Trade Commission, Consumer Response Center, Washington, DC 20580. Phone: 1-877-382-4357.

**17.   MILITARY ACT DISCLOSURE:** The Military Lending Act provides protections for certain members of the Armed Forces and their dependents ("Covered Borrowers"). The provisions of this section apply to Covered Borrowers under the Military Lending Act. If you would like more information about whether you are a Covered Borrower and whether this section applies to you, please contact us at 1-866-808-1933. Statement of MAPR. Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an Annual Percentage Rate of 36%. This rate must include, as applicable to the credit transaction or account: (1) the costs associated with credit insurance premiums; (2) fees for ancillary products sold in connection with the credit transaction; (3) any application fee charged (other than certain application fees for specified credit transactions or accounts); and (4) any participation fee charged (other than certain participation fees for a credit card account). Oral Disclosures. In order to hear important Military Lending Act disclosures and payment information provided in this Note, please call 1-844-310-5891.

**18.** This Agreement shall be interpreted to comply with the Military Lending Act and its implementing regulation, including its restrictions on permissible loan terms and limitations on interest and fees. For accounts opened on or after October 3, 2017, if you are a Covered Borrower (a) the Applicability of Jury Trial Waiver, Class Action Waiver, and Arbitration Provision sections of this Agreement do not apply to you; (b) any interest or fees in excess of the permitted limit under the Military Lending Act shall be reduced by the amount necessary to satisfy that limit and any amounts collected in excess of the permitted limit shall be refunded by crediting your Account or by making a direct payment to you; and (c) any other provision of this Agreement that is inconsistent with the Military Lending Act shall not apply to you.

**19. BUYER'S RIGHT TO CANCEL.** YOU, THE BUYER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.

**20. STATE-SPECIFIC DISCLOSURES.**

## IN-HOME SALE CUSTOMERS: ARIZONA, CONNECTICUT, NORTH DAKOTA AND RHODE ISLAND RESIDENTS:

THIS INSTRUMENT IS BASED UPON A HOME/PERSONAL SOLICITATION SALE SUBJECT TO THE PROVISIONS OF TITLE 44, CHAPTER 15 OF THE ARIZONA REVISED STATUTES IN ARIZONA, THE HOME SOLICITATION SALES ACT IN CONNECTICUT, AND THE NORTH DAKOTA CENTURY CODE IN NORTH DAKOTA. THIS INSTRUMENT IS NOT NEGOTIABLE.

DocuSign Envelope ID: FAA265A2-21AF-4B12-9C5B-5D2D14B608CD

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

**ALABAMA BORROWERS:** ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS NOTE AND LOAN AGREEMENT BEFORE YOU SIGN OR ACKNOWLEDGE IT.

**ARIZONA BORROWERS:**  This instrument is based upon a home solicitation sale, which is subject to the provisions of title 44, chapter 15.1.  This instrument is not negotiable.

**NOTICE OF RIGHT TO FILE COMPLAINT:** The owner of the property subject to this contract has a right to file a written complaint with the Arizona Registrar of Contractors for an alleged violation of Ariz. Rev. Stat. § 32-1154(A) within two (2) years of completion of the specific project subject to this contract. The Arizona Registrar of Contractors may be reached through its website: https://roc.az.gov/; or by telephone: (602) 542-1525.

Notice: You may request that the initial disclosures prescribed in the truth in lending act (15 United States Code §§ 1601 through 1666j) be provided in Spanish before signing any loan documents.

Aviso: Usted puede solicitar que las divulgaciones iniciales prescritas en la Ley de veracidad en los préstamos (Código 15 de los Estados Unidos de América, artículos 1601-1666j) se provean en español antes de firmar cualquier documento del préstamo.

Note: There are additional disclosures for Arizona borrowers in a separate document.

**CALIFORNIA BORROWERS:  This loan is made pursuant to the California Finance Lenders Law, Cal. Fin. Code § 22000 et seq. FOR INFORMATION CONTACT THE DEPARTMENT OF FINANCIAL PROTECTION AND INNOVATION, STATE OF CALIFORNIA.**

**CONNECTICUT BORROWERS:** THIS INSTRUMENT IS BASED UPON A HOME SOLICITATION SALE, WHICH SALE IS SUBJECT TO THE PROVISIONS OF THE HOME SOLICITATION SALES ACT. THIS INSTRUMENT IS NOT NEGOTIABLE

**DISTRICT OF COLUMBIA BORROWERS: Buyer's Right to Cancel –** If this agreement was solicited at or near your residence and you do not want the goods or services, you may cancel this agreement by mailing a notice to the seller. The notice must say that you do not want the goods or services and it must be mailed before midnight of the third business day after you signed this agreement. The notice must be mailed to GOODLEAP, 8781 Sierra College Blvd., Roseville, CA 95661.

**FLORIDA BORROWERS:** This is a home solicitation sale, and if you do not want the goods or services, you may cancel this agreement by providing written notice to the seller in person, by telegram, or by mail. This notice must indicate that you do not want the goods or services and must be delivered or postmarked before midnight of the third business day after you sign this agreement. If you cancel this agreement, the seller may not keep all or part of any cash down payment.

**For Loan Agreements executed in Florida:**  Florida documentary stamp tax required by law in the amount of $0.35 per hundred has been paid or will be paid by GoodLeap directly to the Department of Revenue.  Certificate of Registration #78-8017862271-5.

**ILLINOIS BORROWERS:** Prepayment in full on any installment date under this agreement will reduce insurance charges for the loan.

**IOWA BORROWERS:** NOTICE TO CONSUMER:

[1] Do not sign this paper before you read it.
[2] You are entitled to a copy of this paper.
[3] You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law
IMPORTANT: READ BEFORE SIGNING. The terms of this agreement should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this written contract may be legally enforced. You may change the terms of this agreement only by another written agreement.

**KANSAS BORROWERS:  NOTICE TO CONSUMER:**

(1) Do not sign this agreement before you read it.
(2) You are entitled to a copy of this agreement.
(3) You may prepay the unpaid balance at any time without penalty.

**LOUISIANA BORROWERS:**

CONSUMER'S RIGHT TO CANCEL: If this agreement was solicited at your residence and you do not want the goods or services, you may cancel this agreement by mailing a notice to the seller. The notice must say that you do not want the goods or services and must be mailed before midnight of the third business day after you sign this agreement. The notice must be mailed to: GOODLEAP, 8781 Sierra College Blvd., Roseville, CA 95661. If you cancel, the seller must return all of your cash down payment.

Notwithstanding any other provision in this agreement, you will not be obligated to pay us for our attorney's fees more than twenty-five percent of the unpaid debt after default and referral to an attorney for collect.

**MASSACHUSETTS BORROWERS:  You may cancel this agreement if it has been signed by a party thereto at a place other than an address of the seller, which may be his main office or branch thereof, provided you notify the seller in writing at his main office or branch by ordinary mail posted, by telegram sent or by delivery, not later than midnight of the third business day following the signing of this agreement.  See the attached notice of cancellation form for an explanation of this right.**

DocuSign Envelope ID: FAA265A2-21AF-4B12-9C5B-5D2D14B608CD

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

**MARYLAND BORROWERS:** This loan is made pursuant to the Credit Grantor Closed-end Credit Provisions of Title 12, Subtitle 10 of the Maryland Commercial Law Article (Md. Code Ann., Com. Law § 12-1001 et seq.).

Note: If you are a Maryland borrower who is 65 or older: **YOU, THE BUYER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE FIFTH BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.**

**MICHIGAN BORROWERS: Notice to buyer:**

**(1) Do not sign this contract before you read it.**
**(2) You are entitled to a completely filled-in copy of this contract.**
**(3) Under the law, you have the right to pay off in advance the full amount due and, under certain conditions, to obtain a partial refund of the finance charge.**
**(4) You may rescind or cancel this contract, not later than 5 p.m. on the business day following the date thereof by giving written notice of rescission to the contractor or his agent at his place of business given in the contract or by mailing the notice or cancellation to the contractor to his place of business given in the contract by depositing a properly addressed certified letter in a United States post office or mail box, but if you rescind after 5 p.m. on the business day following, you are still entitled to offer defenses in mitigation of damages and to pursue any rights of action or defenses that arise out of the transaction.**
**The seller is prohibited from having an independent courier service or other third party pick up your payment at your residence before the end of the 3-business-day period in which you can cancel the transaction.**

**MISSOURI BORROWERS: NOTICE OF CANCELLATION**

**If this agreement was solicited at your residence and you do not want the goods or services, you may cancel, without further obligation, this agreement by mailing a notice to the seller at the address as shown below, within 3 days following the above date. You shall return the goods to seller in substantially the same condition as when you obtained them. Seller will then cancel all contracts and negotiable instruments executed by you and return any property given by you to seller within 10 days from date of transaction. If seller does not pick up the purchased goods within 20 days from date of your cancellation, you may retain or dispose of the goods without any further obligation.**

**The notice must be mailed to: GOODLEAP; 8781 Sierra College Blvd, Roseville, CA 95661**

**Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable.  To protect me and you (Lender) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

**NEBRASKA BORROWERS**: A credit agreement must be in writing to be enforceable under Nebraska law. To protect you and us from any misunderstandings or disappointments, any contract, promise, undertaking, or offer to forebear repayment of money or to make any other financial accommodation in connection with this loan of money or grant or extension of credit, or any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any instrument or document executed in connection with this loan of money or grant or extension of credit, must be in writing to be effective.

**NEW HAMPSHIRE BORROWERS: You or your attorney may file a complaint with the New Hampshire Bank Commissioner.**

**NEW JERSEY BORROWERS:**

**RECEIPT:**  GOODLEAP - 8781 Sierra College Blvd., Roseville, CA 95661**,** Residential Solar/Storage System     Loan Down Payment: $0

**NOTICE TO RETAIL BUYER:** YOU MAY RESCIND THIS SALE PROVIDED THAT YOU NOTIFY THE RETAIL SELLER OF YOUR INTENT TO DO SO BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, POSTMARKED NOT LATER THAN 5 P.M. OF THE THIRD BUSINESS DAY FOLLOWING THE SALE. FAILURE TO EXERCISE THIS OPTION, HOWEVER, WILL NOT INTERFERE WITH ANY OTHER REMEDIES AGAINST THE RETAIL SELLER YOU MAY POSSESS. IF YOU WISH, YOU MAY USE THIS PAGE AS NOTIFICATION BY WRITING 'I HEREBY RESCIND' AND ADDING YOUR NAME AND ADDRESS. A DUPLICATE OF THIS RECEIPT IS PROVIDED BY THE RETAIL SELLER FOR YOUR RECORDS.

The section headings of this Note are a table of contents and not contract terms.  Portions of this Note with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires.  In this Note, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

**NORTH DAKOTA BORROWERS:** This instrument is based upon a personal solicitation sale, which is subject to the provisions of the North Dakota Century Code. This instrument is not negotiable.

**OHIO BORROWERS: This loan is made pursuant to the provisions of Ohio Rev. Code Ann. §§ 1321.62-1321.702.**

**OKLAHOMA BORROWERS**: You should refer to the appropriate contract document for any information such document provides about nonpayment, default, the right to accelerate the maturity of the debt, and prepayment rebates and penalties.

DocuSign Envelope ID: FAA265A2-21AF-4B12-9C5B-5D2D14B608CD

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

BUYER'S RIGHT TO CANCEL If this agreement was solicited at your residence and you do not want the goods or services, you may cancel this agreement by mailing a notice to the seller. The notice must say that you do not want the goods or services and must be mailed before midnight of the third business day after you sign this agreement.

The notice must be mailed to: GOODLEAP; 8781 Sierra College Blvd., Roseville, CA 95661.

If you cancel, the seller may keep all or part of your cash down payment not to exceed five percent (5%) of the cash price.

**RHODE ISLAND BORROWERS: NOTICE OF CANCELLATION –** You may cancel this transaction, without any penalty or obligation, within three (3) business days from the above date. If you cancel, your cancellation notice must state that you do not wish to be bound by the agreement and mailed by registered or certified mail not later than midnight three (3) days following the buyer's signing the agreement, excluding Sunday and any holiday on which regular mail deliveries are not made. All cancellations must be mailed to: GOODLEAP, 8781 Sierra College Blvd., Roseville, CA 95661.

**SOUTH CAROLINA AND IDAHO BORROWERS:  BUYER'S RIGHT TO CANCEL –** If you decide you do not want the goods or services, you may cancel this agreement by mailing a notice to the seller. The notice must say that you do not want the goods or services and must be mailed before midnight of the third business day after you sign this agreement.

The notice must be mailed to: GOODLEAP, 8781 Sierra College Blvd., Roseville, CA 95661.

**SOUTH DAKOTA BORROWERS:** Any improprieties in making the loan or in loan practices may be referred to the South Dakota Division of Banking at: 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501, Phone: 605.773.3421.

**UTAH BORROWERS: BUYER'S RIGHT TO CANCEL –** If this agreement was solicited at your residence or place of employment and you do not want the goods or services, you may cancel this agreement by mailing a notice to the seller. The notice must say that you do not want the goods or services and must be mailed before midnight on the third business day after you sign this agreement. The notice must be mailed to:  GOODLEAP, 8781 Sierra College Blvd., Roseville, CA 95661.

The written agreement is a final expression of the agreement between the creditor and debtor and the written agreement may not be contradicted by evidence of any alleged oral agreement.

**VIRGINIA BORROWERS:  BUYER'S RIGHT TO CANCEL – If this agreement was solicited at a residence and you do not want the goods or services, you, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right.**

**WISCONSIN RESIDENTS:** For married Wisconsin residents, my signature on this Promissory Note confirms that this loan obligation is being incurred in the interest of my marriage or family.  No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

**RHODE ISLAND BORROWERS: NOTICE TO BUYER**

(1) **Do not sign this agreement if any of the spaces intended for the agreed terms of the extent of then available information are left blank.**

(2) **You are entitled to a copy of this agreement at the time you sign it.**

(3) **You may at any time pay off the full unpaid balance due under this agreement, and in so doing you may be entitled to receive a partial rebate of the finance and insurance charges.**

(4) **The seller has no right to enter unlawfully your premises or commit any breach of the peace to repossess goods purchased under this agreement.**

(5) **You may cancel this agreement if it has not been signed at the main office or a branch office of the seller, provided you notify the seller at his main office or branch office shown in the agreement by registered or certified mail, which shall be posted not later than midnight of the third calendar day after the day on which the buyer signs the agreement, excluding Sunday and any holiday on which regular mail deliveries are not made.  See the attached notice of cancellation form for an explanation of buyer's rights.**

DocuSign Envelope ID: FAA265A2-21AF-4B12-9C5B-5D2D14B608CD

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

By signing below I/we confirm that I/we have read and agree to the terms in the Loan Agreement:



Borrower's Signature: Ken Hansen _____   Date: Jul 7, 2021

Co-Borrower's Signature: _____   Date: _____

GoodLeap, LLC:

Matt Dawson, Co-Founder

DocuSign Envelope ID: FAA265A2-21AF-4B12-9C5B-5D2D14B608CD

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

**EXHIBIT A: EXAMPLE OF LOAN CLOSING CERTIFICATE**

## Loan Closing Certificate

Borrower**:**                                        **Residence Address:**
Co-Borrower:
Email:
Phone:
Loan Agreement Number:

| LOAN SUMMARY | | | | |
|---|---|---|---|---|
| LOAN START DATE | FIRST PAYMENT DATE | RECURRING PAYMENT DAY | MATURITY DATE | TOTAL LOAN AMOUNT |

| SUMMARY OF LOAN TERMS AND PAYMENTS | | | | | | |
|---|---|---|---|---|---|---|
| LOAN TERM | TOTAL LOAN AMOUNT | INITIAL MONTHLY PAYMENT | INTEREST RATE / APR | TARGET BALANCE | TARGET BALANCE DATE | ADJUSTED MONTHLY PAYMENT* |

*Adjusted monthly payment assumes that no prepayment was made and the Target Balance was not met by the Target Balance Date, and you do not change the Autopay payment election.

Your interest rate/APR and monthly payments may vary depending upon whether you cancel or add Autopay payments during the term of the loan.

| SOLAR/STORAGE SYSTEM DESCRIPTION |
|---|

Installation Contractor:                        *Home Improvement Agreement Number:

*Purchased Goods under this Loan Agreement will be detailed in your Home Improvement Agreement

| PAYMENT TERMS |
|---|

Term:                                             Target Balance Date:
Interest Rate / APR**:**                          Target Balance Amount:
Initial Monthly Payment:                          Adjusted Monthly Payment:

| LOAN SUMMARY |
|---|

Loan Start Date:                                  Maturity Date:
First Payment Date:                               Total Loan Amount:
Recurring Payment Day:

DocuSign Envelope ID: FAA265A2-21AF-4B12-9C5B-5D2D14B608CD

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

FOR ALL BORROWERS:                                                                              Jul 7, 2021

### NOTICE OF RIGHT TO CANCEL

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE ABOVE DATE.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENT MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

IF YOU DO MAKE THE GOODS AVAILABLE TO THE SELLER AND THE SELLER DOES NOT PICK THEM UP WITHIN TWENTY DAYS OF THE DATE OF YOUR NOTICE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO, THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, OR SEND A TELEGRAM TO GOODLEAP, AT 8781 SIERRA COLLEGE BLVD., ROSEVILLE, CA 95746 NOT LATER THAN MIDNIGHT OF   7/10/2021   (Month/Day/Year).

I HEREBY CANCEL THIS TRANSACTION.

_____                    _____
Date                                                          Borrower

DocuSign Envelope ID: FAA265A2-21AF-4B12-9C5B-5D2D14B608CD

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

**FOR ALL BORROWERS:**

Jul 7, 2021

## NOTICE OF RIGHT TO CANCEL

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE ABOVE DATE.

**IF** YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENT MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

**IF** YOU CANCEL YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

**IF** YOU DO MAKE THE GOODS AVAILABLE TO THE SELLER AND THE SELLER DOES NOT PICK THEM UP WITHIN TWENTY DAYS OF THE DATE OF YOUR NOTICE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO, THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, OR SEND A TELEGRAM TO GOODLEAP, AT 8781 SIERRA COLLEGE BLVD., ROSEVILLE, CA 95746 NOT LATER THAN MIDNIGHT OF  7/10/2021  (Month/Day/Year).

**I** HEREBY CANCEL THIS TRANSACTION.

_____

Date                              Borrower

Case 1:22-cv-02828-STV   Document 10-1   Filed 11/10/22   USDC Colorado   Page 18 of 21
DocuSign Envelope ID: FAA265A2-21AF-4B12-9C5B-5D2D14B608CD
THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

## PRIVACY POLICY AND INFORMATION SHARING NOTICE

**Privacy Policy:**  We take our responsibility to protect the privacy and confidentiality of customer information seriously.  We maintain safeguards that comply with federal standards to secure and protect your information.  This policy applies to consumers who are current or former customers of GoodLeap, LLC ("GoodLeap").  We gather information from your application, when you make a payment, consumer credit reporting agencies, public sources, and other data sources.   We may only disclose this data as permitted by law.  We may provide your information without your consent to regulatory or law enforcement agencies as permitted by law.

**Information Sharing and Opt-Out:**  Financial companies choose how they share your personal information.  Federal law gives you the right to limit some, but not all sharing.  Federal law also requires us to tell you how we collect, share, and protect your personal information.  Please read this notice carefully to understand what we do.  For additional information visit: http://www.goodleap.com/privacy.html.

The types of personal information we collect and share include, but aren't limited to:

| | | |
|---|---|---|
| - Account Balances and Payment History | - Social Security Number and Income | - Address |
| - Bank Account Information | - Credit History and Scores | - Phone Numbers |

All financial companies need to share customers' personal information to conduct their everyday business.  In the section below, we list the reasons companies can share their customers' information; the reason we share this information; and whether you can limit this sharing.  If you have any questions please call (877) 290-9991.

| Reasons we share your information | Do we share this information? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes such as to process your transactions, maintain your account, respond to court orders and legal investigations, or report to the credit bureaus | YES | NO |
| For our own marketing purposes to offer products and services to you | YES | NO |
| For joint marketing with other financial companies – to offer other services to you | YES | NO |
| For our affiliates everyday business purposes – information about your transactions and experiences | NO | NA |
| For our affiliates everyday business purposes – information about your creditworthiness | NO | NA |
| For our affiliates to market to you | NO | NA |
| For non-affiliates to market to you | NO | NA |

| | |
|---|---|
| **How does GoodLeap protect my personal information?** | To protect your information from unauthorized access and use, we use security measures that comply with federal law.  These include computer safeguards and secured files and buildings. |
| **How does GoodLeap collect my personal information?** | When you apply for a loan or make a payment.  We also collect information from other data providers such as credit bureaus. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only: |
| | - Sharing for affiliates' business purposes – info about your creditworthiness |
| | - Affiliates from using your information to market to you |
| | - Sharing with non- affiliates to market to you |
| **Affiliates** | Companies related by common ownership |
| **Non-Affiliates** | Companies not related by ownership or control.  Non-affiliates we can share with include other financial services companies or non-financial services companies. |
| **Joint Marketing** | A formal agreement between non-affiliated companies to market to you. |

For CA and VT residents only:  Under California and Vermont law we will not share information we collect about you with companies outside of GoodLeap unless the law allows.

## EXPRESS WRITTEN CONSENT TO COMMUNICATE OR CALL VIA CELL PHONE OR OTHER MEANS

We take your privacy seriously.  By signing this document, you are providing express written consent for GoodLeap, LLC ("GoodLeap") or companies working on our behalf to call you (including through automated means: e.g. autodialing, text, and pre-recorded messaging) via telephone, mobile device or cell phone (including SMS and MMS) and/or via email, even if your telephone number is currently listed on a state, federal, or national Do-Not-Call (DNC) list.

Consent is not required to conduct business with GoodLeap and this consent can be withdrawn at any time by calling (877) 290-9991 or requesting by mail at GoodLeap: 8781 Sierra College Blvd, Roseville, CA 95661. If you withdraw your consent you will be put on GoodLeap's internal Do-Not-Call list.

For NV residents only:  We are providing this notice under state law.  You may be placed on our internal Do-Not-Call list by calling (877) 290-9991.  Nevada asks us to provide their contact information.  Office Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St. Suite 3900, Las Vegas, NV 89101.  Phone: (702) 486-3132; email: bcpinfo@ag.state.nv.us.

Borrower's Signature: **Ken Hansen**
CC2F52E8C25D40F...

Date: Jul 7, 2021

Co-Borrower's Signature: _____     Date: _____

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

## MEMBERSHIP APPLICATION AND AGREEMENTS

GoodLeap partners with various financial institutions and credit unions who may purchase loans originated by GoodLeap. When a credit union purchases your loan you may be enrolled as a member of that credit union and will receive the added benefits of that membership. Your membership may be cancelled any time after enrollment at your request.

By initialing below, I understand that I am applying for a PenFed Credit Union Membership, I have read and reviewed the following disclosures.

https://www.penfed.org/forms/penfed-membership-disclosures
https://www.penfed.org/privacy-policy
https://www.penfed.org/current-service-fees
https://www.penfed.org/accounts/regular-savings-account

Borrower's Initials   **KH**

### PENFED MEMBERSHIP AGREEMENT

The words "I", "me", "my", "myself" mean each person signing the Membership Application/Signature Card including anyone who has access to the account(s).

1.      I understand this account shall be governed by the Code of Virginia, federal laws, National Credit Union Administration (NCUA) Rules and Regulations, and the bylaws and policies and procedures of the credit union and amendments thereto. This account shall be subject to other terms and conditions which are subject to change upon notice to me.

2.      I agree PenFed has the right pursuant to its statutory lien, and I give my express consent to enable PenFed to charge against a balance in my PenFed accounts, including accounts on which I am a joint owner, to include otherwise statutorily protected funds that may not otherwise be available by legal process, to liquidate PenFed indebtedness owed by me or a person who is listed as a joint owner on my accounts with PenFed, including a deceased joint owner. This provision does not include my IRA account or other accounts for which this provision is not permitted under Internal Revenue Code. PenFed may take such action without further notice to me or a joint owner. In regard to those funds having a statutory protection, I understand I may withdraw my express consent for PenFed to apply such funds to pay such indebtedness by notifying PenFed in writing. If my consent is withdrawn, PenFed may, in its sole discretion, terminate services I have with the credit union.

3.      I expressly authorize PenFed to procure upon its request from a person, partnership, credit reporting agency, association, firm, or corporation a credit report, and for such person to furnish PenFed with said credit report concerning financial services I may request or obtain from PenFed as well as subsequent re-evaluation of such financial services.

4.      If I have caused PenFed to incur a loss due to my activities, or if accounts at PenFed are maintained by me in a manner PenFed, in its sole discretion, deems contrary to sound financial practice, I agree PenFed may terminate all accounts or services which I may receive from PenFed with the exception of my Regular Share Account.

5.      I understand if all my shares in PenFed are withdrawn, my membership in PenFed may be terminated. Funds in my accounts will be subject to collection through normal banking channels and PenFed's hold policy.

6.      I agree my share accounts are not transferable except on the records of PenFed.

7.      I agree payment of money in the account on the written instructions of an authorized person excuses PenFed of further legal obligation regarding the proceeds of the transaction. I agree to indemnify and hold PenFed harmless from suits or liability, directly or indirectly, resulting from the handling of the account consistent with the written instructions of an authorized person. PenFed may refuse to honor my instruction if it is unclear or the signature appears not to be authentic.

8.      Financial services provided by PenFed may be used for any transaction permitted by law. I agree illegal use of financial services will be deemed an action of default and/or breach of contract and such service and/or other related services may be terminated in PenFed's discretion. I further agree, should illegal use occur, to waive rights to use PenFed for such illegal use or activity directly or indirectly related to it. I agree to indemnify and hold PenFed harmless from suits or other legal action or liability, directly or indirectly, resulting from such illegal use.

9.      **JOINT SHARE ACCOUNT AGREEMENT:**
If my accounts, either now or in the future, are established as a joint account, PenFed is authorized to recognize all of the joint owner signatures for the payment of funds or for transactions for this account. The joint owners of this account agree with each other and with PenFed that all funds deposited into the account shall be owned jointly by all joint owners. The funds on deposit will be subject to the withdrawal or receipt of all joint owners. In the event of death of an owner and according to the type of joint share account selected, withdrawal or payment may also be made to the survivor(s) or the estate(s) of the deceased owners(s). Each joint owner will authorize PenFed from liability for the payment or withdrawal. A joint owner who is a PenFed member may pledge all or part of the shares in this account as collateral security for a loan or loans, and PenFed is authorized to charge against this account indebtedness owing to it by each of the joint owners.

**Please note: Joint ownership does not constitute membership.**

This account shall be governed by the Code of Virginia, federal laws, rules and regulations, and the bylaws of PenFed and amendments thereto.

PenFed is federally insured by the National Credit Union Administration (NCUA). The information in this form is current as of May 2019 and is subject to change. To determine if changes have occurred since printing, call 800-247-5626. Our address, in accordance with NY Law, is 7940 Jones Branch Drive, Tysons, VA 22102.

I/we have read the attached Membership and Joint Account Agreement and, if accepted, I/we agree to comply with these terms and any amendments thereto, and to subscribe to at least one share. I/we authorize PenFed to obtain a credit report to determine my/our eligibility for this account or other financial services, I/we may request. Under penalties of perjury, I/we certify: 1) the number shown on the form is my/our correct taxpayer identification number; and 2) I/we am/are not subject to backup withholding because (a) I/we am/are exempt from backup withholding, or (b) I/we have not been notified by the Internal Revenue Service (IRS) that I/we am/are subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me/us I/we am/are no longer subject to backup withholding (cross out this section if you are subject to withholding); and 3) I/we are a U.S. person (including a U.S. resident alien). The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

**PenFed Credit Union may purchase loans originated by GoodLeap. By reading and signing this document, I/we agree to the terms of this agreement and to become a member of PenFed if my/our loan is purchased by PenFed. If you sign this form and PenFed does not purchase your loan you will not become a member of PenFed.**

Borrower's Signature:  **Ken Hansen**                                            Date: Jul 7, 2021

CC2F52E8C25D40F...

DocuSign Envelope ID: FAA265A2-21AF-4B12-9C5B-5D2D14B608CD

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

## MONTHLY PAYMENT AUTHORIZATION DOCUMENT

GoodLeap is providing this document to you to complete your loan payment method.

[ x ] **Payment by Autopay:** GoodLeap offers Autopay as a service to our clients. *By paying with Autopay, you authorize GoodLeap and its agents, service providers, and successors or assignees to initiate preauthorized electronic fund transfers ("Autopay") on or after the Recurring Payment Day specified in the Loan Closing Certificate from your account described below or from any updated bank account that you subsequently supply to us (the "Account").* If the Autopay is not made on the Recurring Payment Day for whatever reason, GoodLeap will deduct the payment on the next day that GoodLeap processes such payments, or as soon thereafter as practicable. The Autopay amount will be equal to the Initial Monthly Payment and then the Adjusted Monthly Payment as shown in your Loan Agreement (or any modified amounts we may later agree to) and will continue until your loan is paid in full or you cancel this authorization. If the amount of your payment changes from this amount, we will provide notice at least ten (10) days before the scheduled date of the payment. You certify that you are the owner or joint owner of the Account. We are not responsible for bank charges you may incur due to dishonored Autopay. We may reinitiate any Autopay from the Account that is unsuccessful up to two times, until it is successful. You further authorize us to correct any erroneous transactions with credits or debits to your Account, if necessary.

**Information for Autopay:**

| Bank/Credit Union Name |
| --- |
| Wellsfargo |

| Routing / ABA Number | Bank Account Number |
| --- | --- |
| ██████████ | ██████████ |



Please know that you may terminate this authorization at any time by either (1) paying the remaining balance due, (2) sending written notice to us at **8781 Sierra College Blvd, Roseville, CA 95661**, or (3) calling **1-800-345-9372.** It may take three business days for the change to take effect.  Cancelling Autopay does not terminate or relieve you of making all your payments on time each month. In addition, cancelling Autopay removes the Autopay discount which will increase your interest rate/APR by 0.50% which will result in a higher monthly payment.

[   ] **Payment by Alternative Method:** If this box is checked, you elect NOT to make your scheduled monthly payments by Autopay.  Instead each month, you must mail a check to us or arrange for payments to be made in some other manner acceptable to GoodLeap.  **There may be additional payment processing fees when electing alternative payment methods, such as debit card payment charges, where allowed by law.** Also, by choosing this option you understand that the interest rate/APR and monthly payment will not include the 0.50% discount if you had selected to pay by Autopay.

PLEASE KEEP A COPY OF THIS DOCUMENT FOR YOUR RECORDS.

Borrower's Signature: _Ken Hansen_____     Date: _Jul 7, 2021_
DocuSigned by:
CC52F52E8C25D40F...

DocuSign Envelope ID: FAA265A2-21AF-4B12-9C5B-5D2D14B608CD

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

