IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02828-PAB-STV

KENNETH HANSEN,

        Plaintiff,

   v.

VALOR ROOF AND SOLAR, INC.; TELT VENTURES, LLC d/b/a 1 SOLAR d/b/a ONE SOLAR; and GOODLEAP, LLC,

        Defendants.

**DEFENDANT ONE SOLAR'S REPLY IN SUPPORT OF ITS
ORIGINAL MOTION TO COMPEL ARBITRATION AND
ITS RENEWED MOTION TO COMPEL ARBITRATION**

Defendant, Telt Ventures, LLC d/b/a 1 Solar d/b/a One Solar ("One Solar") by and through its counsel, Holland & Hart LLP, submits its Reply in Support of its original Motion to Compel Arbitration [Doc. 20] and its Renewed Motion to Compel Arbitration [Doc. 41]. This Reply responds to Plaintiff's Response to Motion to Compel Arbitration and Dismiss Proceedings [Doc. 43] and Plaintiff's Response to Renewed Motion to Compel Arbitration [Doc. 53].

## INTRODUCTION

Plaintiff signed a contract containing a clear arbitration agreement. To avoid his commitments, Plaintiff throws a variety of arguments against the wall to see what sticks. But the fundamental facts remain: Plaintiff signed the Purchase & Installation Agreement (the "Agreement"), which contains a valid and enforceable arbitration provision. Thus, his claims must be heard in arbitration. *Levine v. Vitamin Cottage Nat. Food Mkts., Inc.*, No. 20-cv-00261-STV, 2021 U.S. Dist. LEXIS 186188, at *10 (D. Colo. Sep. 27, 2021) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) ("The FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'").

As a matter of law, there is no fraud in the factum with respect to the Agreement, as Plaintiff had a reasonable opportunity to review it. Nor is the arbitration provision so unfair as to be either procedurally or substantively unconscionable. As such, Plaintiff's challenge enters a legal framework wherein he must be successful on every argument to avoid arbitration. Plaintiff does not meet that heavy burden. Thus, the Court must enforce the arbitration agreement and either dismiss the case or stay it pending arbitration.

1

# ARUGMENT

**1.     There was no fraud in the factum as a matter of law, because Plaintiff had a reasonable opportunity to read the Agreement.**

To avoid his arbitration obligation, Plaintiff alleges fraud in the factum.[1] (Resp. at 8–10.) He claims he did not realize he was signing a contract to purchase a solar system and that, thus, the parties never formed an agreement in the first place. (*Id*. (alleging that Plaintiff had excusable ignorance when he signed the Purchase & Installation Agreement because he believed "he was simply signing to qualify for solar, not purchase it.").) But even assuming Plaintiff believed he was signing an agreement to qualify for a solar system, there was no fraud in the factum, because he had a reasonable opportunity to read the Agreement.

In adjudicating fraud in the factum claims, the Tenth Circuit follows the Restatement of Contracts. *Garcia v. Corinthian Colls., Inc.*, No. 06-cv-00590-EWN-MEH, 2006 U.S. Dist. LEXIS 99047, at *12 (D. Colo. June 23, 2006), *report & recommendation adopted by Garcia v. Corinthian Colls., Inc.*, No. 06-cv-00590-EWN-MEH, 2006 U.S. Dist. LEXIS 76503, at *1 (D. Colo. Oct. 20, 2006) (citing Restatement (Second) of Contracts § 163). Critically, the Restatement illustrates that if one party drafted the contract and deceitfully changed material terms, the other party still assented to the contract if he "had a reasonable opportunity to read the writing." Restatement (Second) of Contracts § 163, Illustration 3. This is true whether or not the party actually availed himself of the opportunity to read the contract. *Id*. Here, even taking all of Plaintiff's assertions as true, Plaintiff could have read the Agreement, which One Solar emailed

---

[1] Plaintiff concedes that he signed the Purchase & Installation Agreement, (Resp. at 9), but argues he was deceived such that he could not assent to forming the contract, (*id*.).

to him before he signed it. (Declaration of Mark Brown ¶¶ 6, 8–9, 11–16, attached hereto as Exhibit 1.)

As the Signing Logs show, One Solar sent Plaintiff the Agreement on July 7, 2021 at 6:50 pm MST. (Exhibit 1 at Signing Log.) Plaintiff then signed the Agreement at 7:12 pm MST. (*Id*.) Further, One Solar did not require Plaintiff to sign the Agreement by a certain time. (Ex. 1 ¶ 9.) Thus he had an opportunity to read the contract. Under Colorado law, "if one signs a contract without reading it he is barred by his negligence from claiming that he is not bound by what he has signed." *Platt v. Winnebago Indus., Inc.*, No. 1:16-cv-02736-WYD-SKC, 2018 U.S. Dist. LEXIS 204567, at *25 (D. Colo. Sep. 14, 2018) (holding the plaintiffs were bound by the contract they signed regardless of whether "they actually read the warranty") (quoting *Rasmussen v. Freehling*, 412 P.2d 217, 219 (Colo. 1966)); see also *Vernon v. Qwest Commc'ns. Int'l, Inc.*, 925 F. Supp. 2d 1185, 1191 (D. Colo. 2013) ("However, if one chooses to 'sign' a contract and to accept its benefits without reading and understanding its terms, he generally must accept the consequences of his decision.").

Accordingly, federal courts reject the argument that purported misrepresentations amount to fraud in the factum when the complaining party has a reasonable opportunity to read the agreement, whether or not the plaintiff availed himself of that opportunity. *Garcia*, 2006 U.S. Dist. LEXIS 99047 at *12-13; *Boyd v. Allied Home Mortg. Capital Corp.*, 523 F. Supp. 2d 650, 655 (N.D. Ohio 2007). Because One Solar provided Plaintiff a reasonable opportunity to review the Agreement, the arbitration provision is, at most, voidable, which is a decision for the arbitrator to make. *Garcia*, 2006 U.S. Dist. LEXIS 99047, at *12-13 (holding that the arbitrator has "jurisdiction to resolve any issues concerning a voidable contract, but the federal courts do

3

not").

      **2.**      **The arbitration agreement is not unconscionable.**

Plaintiff also tries to avoid his arbitration obligations by alleging that the arbitration provision is unconscionable. (Resp. at 15–19.) Under either Utah or Colorado law,[2] an arbitration agreement may be avoided if the arbitration provision is unconscionable. As another district court in the Tenth Circuit defined it, an agreement is unconscionable when it is "unreasonably favorable to one party while precluding a meaningful choice of the other party." *Santa Fe Cmty. Coll. v. Ztark Broadband, Ltd. Liab. Co.*, No. 20-1151 SCY/KK, 2022 U.S. Dist. LEXIS 213387, at \*31 (D.N.M. Nov. 28, 2022). The arbitration provision here is not procedurally or substantively unconscionable.

      **Procedural unconscionability.** Procedural unconscionability relates to the "circumstances of contract negotiation and formation." *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1252 (10th Cir. 2018) (analyzing under similar California law). To support his claim, Plaintiff first makes much about the fact that the contract, like most consumer contracts, is a standardized one drafted by One Solar. (Resp. at 16.) But this factor is not dispositive. *Gen. Steel Domestic Sales, LLC. v. Rising Sun Missionary Baptist Church, Inc.*, No. 11-cv-001332-DME-CBS, 2012 U.S. Dist. LEXIS 68812, at \*8 (D. Colo. May 17, 2012) (citing cases); *Levine*, 2021 U.S. Dist. LEXIS 186188 at \*35 ("A contract of adhesion . . . is not sufficient for a finding of

---

[2] Plaintiff assumes Colorado controls this analysis. (*See* Resp. at 15–19.) Yet the Agreement stipulates that Utah law governs. (Mtn. at 8–9.) Utah and Colorado law, however, follow a substantially similar analysis and likely lead to the same outcome. *Compare Knight Adjustment Bureau v. Lewis*, 228 P.3d 754, 756–57 (Utah Ct. App. 2010), *with Lincoln Gen. Ins. Co. v. Bailey*, 224 P.3d 336, 341 (Colo. App. 2009).

unconscionability."). Nor does the fact that the parties may have unequal bargaining power mean the Agreement is unconscionable, as Plaintiff still enjoyed meaningful choice through his ability to reject the Agreement entirely and not do business with One Solar. *Gen. Steel*, 2012 U.S. Dist. LEXIS 68812 at *8 ("Nor did this transaction involve the absence of meaningful choice because there is no suggestion that the [plaintiff] had to buy [the product] and that [he] had to buy the [product] from [defendant]."); *Cook v. PenSa, Inc.*, No. 13-cv-03282-RM-KMT, 2014 U.S. Dist. LEXIS 106730, at *35 (D. Colo. Aug. 1, 2014) (noting the plaintiffs were "always free to invest their money elsewhere"). Moreover, Plaintiff is hardly unsophisticated. To the contrary, he runs his own business as a general contractor. (Resp. at 2.) So, he should be well aware of what a typical consumer construction contract entails.

Next, as shown previously, One Solar provided Plaintiff with a reasonable opportunity to familiarize himself with the Agreement. (Ex. 1 ¶ 9); see also *Levine,* 2021 U.S. Dist. LEXIS 186188 at *36 (finding that sending an agreement by email provided the plaintiff an opportunity to "print, review," or consult an attorney). Finally, the format of the arbitration provision does not render it unconscionable. The provision is presented in the same manner as all other provisions and clearly labeled, not hidden or "buried." *Gen. Steel*, 2012 U.S. Dist. LEXIS 68812 at *11 (noting that the relevant provision was "in the same-sized front" as the rest of the agreement).

**Substantive unconscionability.** The relationship of the parties also does not evince substantive unconscionability, which relates to the fairness of an agreement's terms. *Beltran*, 907 F.3d at 1252. Plaintiff first argues the provision is unconscionable because he would be required to pay certain fees in arbitration. (Resp. at 18.) But the amount of such fees is meaningless without considering the amount that Plaintiff could recover, as well as "costs [he] might incur

5

through litigation." *Gen. Steel*, 2012 U.S. Dist. LEXIS 68812 at *15–16. Plaintiff's argument that he "should not and could not" have anticipated an arbitration agreement is also unpersuasive, because he had a reasonable opportunity to review the Agreement and because he runs a construction business himself. Nor does the arbitration taking place in Utah render the provision unconscionable. *Id*. at *13 (holding that even though the location of the arbitration favored the defendant, it was not substantively unfair). Finally, Plaintiff's claim that the provision was a "surprise" and "unfair" is not credible, because One Solar provided him with the Agreement before he signed it.

Accordingly, the various factors do not support a finding that the arbitration provision is unconscionable. As such, Plaintiff cannot avoid arbitration.

### 3. The Parties Committed Arbitrability to the Arbitrator

Given that the agreement is valid, the legal framework outlined in One Solar's Motion to Compel Arbitration governs. Thus, if the Court determines the parties committed arbitrability to the arbitrator, then its analysis is done. Here, the parties did so by "clear and unmistakable" evidence. (Mtn. at 4–7.) Yet Plaintiff contests that the parties agreed to delegate arbitrability to the arbitrator by arguing that the arbitration provision is narrow and that the parties' incorporation of the AAA Construction Rules is insignificant. (Resp. at 10–12.) Both arguments are misguided.

#### a. The Agreement contains a broad arbitration provision.

First, Plaintiff argues that the arbitration agreement is narrow. (Resp. at 11.) But as outlined in One Solar's motion (Mtn. at 4–6), that is incorrect. To begin with, Plaintiff misreads the contractual language. Section 7 starts by outlining several scenarios. First, it clarifies whether

6

One Solar must continue performing work if a dispute arises regarding One Solar's performance. (Mtn. at Ex. 1, Ex. A § 7.) It need not. Next, the paragraph focuses on the dispute resolution process should "*any* dispute" arise.[3] "[I]f any dispute should arise," the parties first commit to meeting first and trying to resolve the matter informally. (*Id*.) Should that informal action fail, then, second, that dispute must "be determined by binding arbitration." (*Id*.) This provision is, then, quite broad.

But even if Plaintiff's reading is correct, and the "regarding" language were to be read to modify which disputes should be arbitrated, courts would still consider that language "broad." In that case, the arbitration provision would commit the parties to arbitrate any dispute regarding "performance of the work, or payment or any alleged change in the work." (*Id*.) Virtually any disputes that could arise out of a contract for purchase and installation of a residential solar system are ones regarding performance, payment, or changes in the work. So, the provision encompasses nearly any dispute that could arise, making it broad. And the provision is also substantially broader than provisions found by courts to be narrow, such as those that only cover disputes regarding termination. *See, e.g.*, *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1262 (10th Cir. 2005). Accordingly, the provision itself is broad under any reading.[4] That fact provides clear and unmistakable evidence under Colorado case law that the parties

---

[3] Plaintiff never explains why the defined categories in the first sentence should also apply to the arbitration provision in the fourth sentence, particularly when the provision contains an intervening broader sentence.

[4] Importantly, for the Court to hold that the parties committed arbitrability to the arbitrator, the Court need not determine whether this dispute falls under the scope of the arbitration provision (though it does). Instead, the Court need only decide that the parties committed arbitrability to the arbitrator—as evidenced by the presence of the broad arbitration provision and incorporation of the AAA rules—and end its analysis.

intended to delegate arbitrability to the arbitrator.

                b.        <u>The parties incorporated the AAA Construction Rules.</u>

The second factor showing clear and unmistakable evidence of the parties' intent to arbitrate arbitrability is the Agreement's incorporation of the AAA Construction Rules. (Mtn. at 6–7.) The AAA rules grant the arbitrator jurisdiction over threshold arbitrability issues including "the existence, scope, or validity of the arbitration agreement." (*Id*. at Ex. 2.) Case law shows that incorporating arbitration rules that commit arbitrability to the arbitrator is clear evidence of an intent to arbitrate arbitrability. (*Id*. at 6–7) (citing cases).

Plaintiff fails to rebut this principle. Rather, he first argues that the AAA rules "do not exclusively commit arbitrability to the arbitrator." (Resp. at 11.) But the rules plainly state the opposite: *i.e.*, that the "arbitrator *shall* have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement," (Mtn. at 6), which is substantially similar to other arbitration rules that courts have held demonstrate clear and unmistakable evidence of the intent to delegate arbitrability, (*id*. at 6–7 (citing cases)). The case law is also unequivocal that incorporation of the AAA rules specifically "provides clear and unmistakable evidence that the parties intended to delegate matters of arbitrability to the arbitrator." *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1246–48 (10th Cir. 2018) (citing cases).

Second, Plaintiff claims this case is similar to another case in which Judge Jackson allegedly rejected this argument. But that case did not contest the general principle regarding incorporation of specific arbitration rules. *See Smith v. Aliera Cos.*, 534 F. Supp. 3d 1345, 1354–55 (D. Colo. 2021). Rather, Judge Jackson distinguished the facts before him as falling outside

8

the general principle because the plaintiffs in that case had "contested signing or knowing about the arbitration clause." *Id*. Plaintiff cannot credibly make the same claim here, because One Solar provided him a reasonable opportunity to review the Agreement. (Ex. 1 ¶ 9.)

In sum, the parties provided clear and unmistakable evidence that they committed arbitrability to the arbitrator. This Court should, thus, end its analysis and refer the case to arbitration.

**4. Should the court decide arbitrability itself, Plaintiff's claims fall within the scope of the arbitration clause and are, thus, arbitrable.**

Plaintiff further argues that not only must the Court decide arbitrability, but that his claims are not arbitrable because they do not fall under the scope of the arbitration agreement. (Resp. at 12–15.) He is again mistaken.

a. <u>The arbitration clause is not narrow.</u>

Plaintiff first claims that the arbitration provision is narrow. But for the reasons explained in One Solar's motion (Mtn. at 11), and above, the provision is broad.

Nor does One Solar's reading—that the arbitration agreement covers "any dispute" arising that the parties could not resolve informally—render Section 8 superfluous. Section 8 provides that "[i]f any action is brought by any party with respect to its rights under this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees, and all other court costs, as determined by the court and not a jury." (Mtn. at Ex. 1, Ex. A § 8.) Plaintiff insists that this language means that any "disputes other than over performance of the work, payment, or scope of the work are to be decided by a court and not arbitration." (Resp. at 13.) But this reading is unnecessarily rigid. For example, at present, should the Court refer this case to arbitration and stay it pending the arbitration, the Court would then be positioned to determine

9

attorney fees and costs for the prevailing party. Thus, because the current litigation could fall under the scope of Section 8 according to One Solar's reading, then One Solar's reading necessarily does not render Section 8 meaningless.

          b.      <u>Plaintiff's claims fall within the scope of the arbitration agreement.</u>

Finally, to avoid arbitration, Plaintiff must also show that his claims fall outside the scope of the arbitration provision. He fails to do so.

Plaintiff's Response seemingly concedes that pursuant to the "any dispute" language, his claims fall under its scope and are arbitrable. (*See* Resp. at 14–15.) So he focuses instead on reading the provision as to apply only to disputes regarding the work, payment, or any alleged change in the work. (*Id*.) But Plaintiff's claims would nonetheless fall under the scope of the provision even if it was so limited. Plaintiff's claims consist of alleged statutory violations related to the Purchase & Installation Agreement and the Loan Agreement: two documents fundamentally related to payment. Thus, it would not be inaccurate to characterize claims as a dispute between the parties regarding payment.

## CONCLUSION

For the reasons explained above and in One Solar's Motion to Compel Arbitration and its Renewed Motion to Compel Arbitration, the Court should grant One Solar's motions, compel arbitration, and dismiss the case without prejudice or stay it until arbitration has been completed.

Dated:  February 3, 2023.

                Respectfully submitted,

                <u>s/Adrianne Rosenbluth</u>
                Kevin McAdam
                Adrianne Rosenbluth
                Holland & Hart LLP
                555 17th Street, Suite 3200
                Denver, CO  80202
                Phone: (303) 295-8000
                kcmcadam@hollandhart.com

                *Counsel for Defendant*
                *Telt Ventures, LLC d/b/a 1 Solar d/b/a One Solar*

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2023, I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to all counsel of record.

*s/Adrianne Rosenbluth*
Adrianne Rosenbluth
