# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02828-PAB-STV

KENNETH HANSEN,

    Plaintiff,

v.

VALOR ROOF AND SOLAR INC., a Colorado Corporation;
TELT VENTURES, LLC a Utah limited liability company; and
GOODLEAP, LLC, a California Limited Liability Company.

    Defendants.

## DECLARATION OF MARK BROWN

I, Mark Brown, being duly sworn, do state and declare as follows based on my own personal information and belief.

1. I am over the age of eighteen, and I am competent to testify to the matters detailed in this Declaration.

2. I am an owner of Valor Roof and Solar, Inc.

3. While I was not personally present for the interaction between Mr. Hansen and LaRon Wallace on July 7, 2021, I can testify as to the training and general procedures that we have our sales representatives follow in customer interactions.

4. As to the sales process, our general training is intended to enable our sales representatives to help customers, like Mr. Hansen, understand the benefits of obtaining a solar system and costs of the system.

5. After a customer, like Mr. Hansen, indicates that he would like to move forward, our sales representatives use a Valor Roof and Solar tablet to run an initial examination to determine whether the customer qualifies to obtain a loan for the system. This credit-check process is completed through the Goodleap website on the sales representative's tablet while they are interacting with the customer.

6. Upon determining that the customer is qualified to move forward, the sales representative will use the 1Solar software on their tablet to send an email to the customer with the proposed Purchase and Installation Agreement. The proposed contract will list the basic information obtained from the customer during the qualification process (name, address, and contact information), and the proposed contract always lists the cost of the system, the details of the solar system to be installed, and the other terms and conditions on the 1Solar Contract.

7. Also as that time, our sales representatives will use the Goodleap website to send the customer the proposed loan documentation from Goodleap to the same email account.

8. Based on my review of the Purchase and Installation Agreement applicable to Mr. Hansen and the SignRequest Signing Log, the emails were sent to kbjzhansen@comcast.net on July 7, 2021.

9. Our sales representatives are trained to inform the customer that the proposed contracts are sent to the customer's email account for access on the customer's computer or mobile device. This allows the customer to review the contracts on their own desired timeline.

10. Customers do not sign contracts to purchase the system or loan agreements on the sales representative's tablet.

11. Once the customer signs the contract, the electronic signing service, SignRequest, would then email the sales representative a copy to sign electronically. Once the sales representative signs the contract, the signing service then emails a completed contract to the customer and to the sales representative.

12. I have accessed our email records for LaRon Wallace to determine how the sales process and contract execution was performed in this matter. From LaRon Wallace's email account, we have sent the correspondence to our counsel, including the contract and Signing Log that were attached to the email from SignRequest. The SignRequest email, executed Purchase and Installation Agreement, and Signing Log are also enclosed with this Declaration.

13. The Signing Log matches what would be a typical sales process. The log details that on July 8, 2021, 12:50 a.m. (UTC), also known as 6:50 pm Mountain Time on July 7, 2021, the Purchase and Installation Agreement was sent to Mr. Ken Hansen at kbjzhansen@comcast.net.

14. The Purchase and Installation Agreement was signed by Mr. Hansen at 1:12 a.m. (UTC) – also known as 7:12 p.m. Mountain Time.

15. LaRon Wallace then signed the contract at 1:13 a.m. – also known as 7:13 p.m. Mountain Time.

16. The email, including the completed contract and singing log, from SignRequest was received at LaRon Wallace's email account at 7:13 p.m. Mountain Time.

3

I declare under the penalty of perjury under the law of the State of Colorado and the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

By: Mark Brown

Date: 2/3/23

| | |
|---|---|
| **From:** | LaRon Wallace |
| **To:** | James Shanor |
| **Subject:** | Fwd: Signed: 1Solar_KenHansen_PurchaseAgreement.pdf |
| **Date:** | Monday, January 16, 2023 5:29:28 PM |
| **Attachments:** | 1Solar_KenHansen_PurchaseAgreement_signed.pdf |
| | 1Solar_KenHansen_PurchaseAgreement_signing_log.pdf |



## LaRon Wallace The Solar Professional

Solar Renewable Energy & Roofing Consultant

https://valorroofandsolar.com/

**(573) 514-5354**

Connect with me:



*"The lips of Wisdom are closed, except to the ears of Understanding."*


---------- Forwarded message ---------
From: **SignRequest** <no-reply@signrequest.com>
Date: Wed, Jul 7, 2021 at 7:13 PM
Subject: Signed: 1Solar_KenHansen_PurchaseAgreement.pdf
To: <laron.wallace@valorroof.com>


1Solar



## Document signed

Please download the document and signing log for your own records. All parties involved have received this email.

*1Solar_KenHansen_PurchaseAgreement.pdf*
sent by
*leads@1solar.com*

We have attached the signed document and the signing log to this email.

If you have any questions about this document, please contact
*leads@1solar.com*

SHA256 security hash of document content:

**e1020d2c4c32efd409b0b71cf8058762ba233695b013aa960c0247c6b877dc98**

SHA256 security hash of signing log content:

**b9b252032d7ffd917e243e1def56c0010126a867e9958e44cf74c994e9ec8004**

Document ID: **911V4KZ7**

Sent by SignRequest · Singel 542, 1017 AZ Amsterdam



# Signing Log

Document ID: 911V4KZ7

**1Solar**

| | |
|---|---|
| Document name: | 1Solar_KenHansen_PurchaseAgreement.pdf |
| | SHA256 security hash: |
| | e1020d2c4c32efd409b0b71cf8058762ba233695b013aa960c0247c6b877dc98 |
| Sent on: | July 8, 2021, 12:50 a.m. (UTC) |
| From: | SignRequest <no-reply@signrequest.com> on behalf of (leads@1solar.com) |
| To: | kbjzhansen@comcast.net, laron.wallace@valorroof.com |
| Subject: | 1Solar has sent you a SignRequest |
| Message: | |

> Please sign this document.
>
> Kind regards,
>
> 1Solar

| | |
|---|---|
| IP address: | 52.34.222.214 |
| User agent: | node-superagent/3.7.0 |

**leads@1solar.com**

| | |
|---|---|
| Email address verification: | Verified by SignRequest |

**kbjzhansen@comcast.net**

| | |
|---|---|
| Email address verification: | Verified by SignRequest |
| Text added (1solarAddress), page 2: | 15131 E Freemont Dr, Centennial, Colorado 80112 |
| Text added (cancelDate), page 2: | Jul 7, 2021 |
| Text added, page 2: | Jul 7, 2021 |
| Signature added, page 2: | *[signature: Ken Hansen]* |
| Text added (srname), page 2: | LaRon Wallace |
| Text added (signer0.name), page 2: | Ken Hansen |
| Text added (payment2), page 1: | See Loan Docs |
| Text added (payment1), page 1: | See Loan Docs |
| Text added (loanAmount), page 1: | See Loan Docs |
| Text added (paymentType), page 1: | Loan |
| Text added (limit), page 1: | Electrical Contractor |
| Text added (standard), page 1: | CO 19GC00297 |
| Text added (balance), page 1: | $54,841.60 |
| Text added (downPay), page 1: | $0.00 |
| Text added (systemCost), page 1: | $54,841.60 |
| Text added (inverter), page 1: | SolarEdge |
| Text added (panel), page 1: | Heliene 320 |



# Signing Log

| | |
|---|---|
| Text added (inverterCount), page 1: | 1 |
| Text added (panelCount), page 1: | 41 |
| Text added (systemSize), page 1: | 13.12 |
| Text added (email), page 1: | Kbjzhansen@comcast.net |
| Text added (phone), page 1: | +1 (303) 707-1047 |
| Text added (zip), page 1: | 80121 |
| Text added (state), page 1: | Colorado |
| Text added (city), page 1: | Centennial |
| Text added (street), page 1: | 5862 S Logan Ct |
| Text added (signer0.name), page 1: | Ken Hansen |
| IP address: | 174.198.137.152 |
| User agent: | Mozilla/5.0 (iPad; CPU OS 12_4_8 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/12.1.2 Mobile/15E148 Safari/604.1 |
| Document signed: | July 8, 2021, 1:12 a.m. (UTC) |

**laron.wallace@valorroof.com**

| | |
|---|---|
| Email address verification: | Verified by SignRequest |
| Signature added, page 5: | *LaRon Wallace* |
| Text added, page 2: | Jul 7, 2021 |
| Signature added, page 2: | *LaRon Wallace* |
| IP address: | 174.198.135.51 |
| User agent: | Mozilla/5.0 (Macintosh; Intel Mac OS X 10_15_6) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/14.1.1 Safari/605.1.15 |
| Document signed: | July 8, 2021, 1:13 a.m. (UTC) |



CO 19GC00297
Electrical Contractor

# PURCHASE & INSTALLATION AGREEMENT

## I. Customer Information

**Homeowner 1 Name:** Ken Hansen
**Homeowner 2 Name:**
**Homeowner 3 Name:**

**Address:** 5862 S Logan Ct
**City:** Centennial
**State:** Colorado
**ZIP:** 80121

**Primary Phone Number:** +1 (303) 707-1047
**Secondary Phone Number:**

**Primary Email:** Kbjzhansen@comcast.net
**Secondary Email:**

## II. System Summary

- **System Size (kW):** 13.12
- **# of Panels:** 41
- **# of Inverters:** 1
- **MODULES Brand (Size):** Heliene 320
- **INVERTERS Brand (Model):** SolarEdge

## Notes

## HOA

## III. Payment Summary

- **System Cost:** $54,841.60
- **Deposit:** $0.00
- **Balance Due:** $54,841.60

## IV. Payment Info & Terms

- **Payment Type:** Loan
- **Amount:** See Loan Docs
- **Collect Payment #1:** See Loan Docs
- **Collect Payment #2:** See Loan Docs

## V. Terms and Conditions

(As used in this Agreement, or the Exhibit, "Buyer," "you," "your," and "yours" refer to you, the Customer. "We," "our," and "us" refer to 1Solar and its subcontractors or assigns)

1. LIMITED AUTHORITY OF INDEPENDENT CONTRACTORS: ANY SALES REPRESENTATIVE OR CONSULTANT WHO SELLS OUR PRODUCTS AND SERVICES DIRECTLY TO CUSTOMERS IN THEIR HOMES OR BUSINESSES, AS WELL AS ANY SELF-EMPLOYED TECHNICIAN OR INSTALLER WHO INSTALLS OR SERVICES OUR PRODUCTS, ARE INDEPENDENT CONTRACTORS AND NOT EMPLOYEES OF 1SOLAR AS SUCH, THESE INDEPENDENT CONTRACTORS ARE NOT AUTHORIZED TO PROMISE OR OFFER YOU ANYTHING WHICH WOULD CONTRADICT OR CHANGE THE EXPRESS TERMS AND CONDITIONS CONTAINED IN THIS AGREEMENT AND WE WILL NOT HONOR ANY SUCH VERBAL PROMISES OR OFFERS UNLESS SPECIFICALLY AGREED TO IN WRITING BY US.

## V. Terms and Conditions (Continued)

2. INSTALLATION OF SYSTEM: By signing below, you authorize us to install the System at the Service Address and agree to pay us the Total Price for the System set forth in Section III above, and we agree to sell and install the System at the Service Address in compliance with applicable laws and regulations. You understand that installation of the System may require drilling and cutting into certain areas where the System will be installed. We shall have the right to determine the method, details and means of performing installation of the System. We shall not be liable for any damage or loss sustained by you as a result of delay in installation of equipment, equipment failure, or for interruption of service due to factors outside of our direct control, such as electric failure, strikes, walk-outs, war or acts of God. We make no promise of delivery and installation of equipment or commencement of services by any particular date. You agree: (a) to give us access to the Service Address during normal working hours (i.e., 8:00 a.m. to 5:00 p.m., Monday through Friday, excluding national holidays) to complete installation of the System; (b) to ensure that work areas are free of preexisting hazards (i.e., unsafe physical conditions or environmental hazards and building/zoning code violations); (c) to ensure that your security system, if any, shall not interfere with installation of the System; (d) you will not allow unattended minors at the Service Address while we are present; (e) to control pets and keep them away from work areas; (f) to keep posted permits on display at all times; and (g) that you may be subjected to transportation/storage charges or other resulting charges if anyone under your control interferes with or delays installation of System.

3. WARRANTIES: The System components are covered by the applicable manufacturer's warranty (see manufacturer's warranty for further information) and/or as set forth on Exhibit A. The warranty related to our installation of the System is included in Exhibit A to this Agreement. YOU ACKNOWLEDGE AND AGREE THAT WE HAVE MADE NO REPRESENTATIONS OR WARRANTIES EXPRESS OR IMPLIED, AS TO THE CONDITION OR FUNCTIONS OF THE SYSTEM OR ITS MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, YOU HAVE NOT RELIED ON ANY REPRESENTATIONS OR WARRANTIES OTHER THAN THOSE EXPRESSLY CONTAINED HEREIN, AND NO REPRESENTATION, STATEMENT, CONDITION OR WARRANTY NOT CONTAINED IN THIS AGREEMENT SHALL BE BINDING ON THE PARTIES OR HAVE ANY FORCE OR EFFECT WHATSOEVER.

4. INCENTIVES/TAX BENEFITS: 1Solar, at the time of purchase, makes a good-faith estimate of the amount of applicable incentives that are effective and accurate on that date. 1Solar shall use commercially reasonable efforts to process/register the incentive request on your behalf. If the incentive amount changes for any reason from the estimated amount, including related to utility implemented adjustments during that process period, you agree that 1Solar is not responsible for any reduction or difference from the estimated incentive. If you or your property have already received the estimated incentives within the prior five (5) years, you agree that 1Solar is not responsible for any reduction or difference from the estimated incentive. You acknowledge that we have not provided you with any tax or legal advice and have not made any representations to you regarding the tax and legal consequences of owning the System and recommends you consult with your tax advisor.

## VI. Acknowledgements

| Customer Name | Signature | Date |
|---|---|---|
| Ken Hansen | *[signed] K. Hansen* | Jul 7, 2021 |

| Customer Name | Signature | Date |
|---|---|---|
|  |  |  |

| Customer Name | Signature | Date |
|---|---|---|

| Energy Consultant Name | Signature | Date |
|---|---|---|
| LaRon Wallace | *LaRon Wallace* | Jul 7, 2021 |

## VII. 3-Day Right to Cancel

You, the buyer, have the right to cancel this contract within three business days ( Jul 7, 2021 ). You may cancel by e-mailing, mailing, or delivering a written notice to the contractor at the contractor's place of business by midnight of the third business day after you received a signed and dated copy of the contract that includes this notice. Include your name, your address, and the date you received the signed copy of the contract and this notice. If you cancel, the contractor must return to you anything you paid within 10 days of receiving the notice of cancellation. For your part, you must make available to the contractor at your residence, in substantially as good condition as you received them, goods delivered to you under this contract or sale. Or, you may, if you wish, comply with the contractor's instructions on how to return the goods at the contractor's expense and risk. If you do make the goods available to the contractor and the contractor does not pick them up within 20 days of the date of your notice of cancellation, you may keep them without any further obligation. If you fail to make the goods available to the contractor, or if you agree to return the goods to the contractor and fail to do so, then you remain liable for performance of all obligations under the contract. To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice, or send a telegram to: 15131 E Freemont Dr, Centennial, Colorado 80112

| Customer Signature | Date |
|---|---|
|  |  |
|  |  |
|  |  |

Copyright 2021 1Solar, ALL RIGHTS RESERVED. DOC.02.02.2021

www.1solar.com

## EXHIBIT A

1. Statement of Warranty Coverage by Installer

a. Please refer to manufacturer's website and provided materials for information regarding inverter, power production, and module linear performance warranties.

b. Warranty is not required to cover problems resulting from exposure to harmful materials and chemicals, fire, flood, lightning, hurricane, tornado, hailstorm, earthquake, or other acts of God, vandalism, alteration of system by anyone not authorized by the installation company, or any other cause beyond the control of the installation company. In the event that any part of the system fails due to a manufacturer defect, during the manufacturer warranty time period, 1Solar is not liable or responsible for the reimbursement of lost production. Buyer is responsible for monitoring your system and informing 1Solar immediately should there be an error or belief the system is not producing as it should.

c. 1Solar is not liable for any pre-existing conditions nor for any failures of existing equipment. If for any reason you believe there is an issue on items installed by us and/or our authorized service providers that relate to any pre-existing conditions or existing equipment, you must allow us and/or their authorized service providers first right to inspect and if needed make the necessary repairs. Any repairs or ad-ditional costs are not the responsibility of 1Solar.

2. Energy Bill: Seller makes no guarantee or promise concerning reduction on energy bills, both electric and gas as a result of any work performed. Estimated energy savings is modeled using information provided to the seller and is not a guarantee of actual savings. Heating and cooling costs are a function of utility rates, lifestyle activities of the occupants, temperature at which the thermostats are set, hot water usage, ventilation, cooking habits, changes in occupancy, home remodels or additions, weather patterns, homeowner behavior, and other factors over which Seller has no control.

3. Payment In Full: Payment is expected to be made in full upon racking and panel installation. Buyer is expected to pay in full prior to inspection and system commissioning & monitoring. Inspection and commissioning can take several weeks depending on city and utility company. Seller agrees to facilitate the process of getting the system inspected, commissioned, and monitoring setup within a reasonable time frame while working with the city and/or county inspectors, utility company, and manufacturer.

4. Termites and Mold: Seller shall not be obligated to perform any work to correct damage caused by termites, mold, or dry rot.

5. Protection of Buyer's Property: Buyer agrees to remove or protect any personal property, inside and out including but not limited to carpets, rugs, drapes, furniture, shrubs, plantings and Personal items and Seller agrees to show due care with said items as well as cover, mask, pro-tect shrubbery as possible and trim if necessary, however, Seller shall not be held responsible for all or any of said items.

6. Cancellation After 3-Day Right: If Buyer cancels after 3-day right to cancel, a 35% fee is automatically applied to cover product restocking costs and other non-refundable services incurred on Seller's behalf. These services include but are not limited to permitting, engineering, financing, administrative processing, etc. All other payments will be returned within 30 days of cancellation.

7. Dispute Resolution: If any dispute shall arise between 1Solar and Buyer regarding performance of the work, or payment or any alleged change in the work, 1Solar and its subcontractors may not be forced to continue work until payment is received. If any dispute should arise it is agreed that 1Solar and Buyer shall meet first to review and negotiate in a peaceful manner all disputes per terms and conditions of contract. If 1Solar, and its subcontractors performs to code and inspections are approved by the inspectors, Buyer cannot withhold any payments or rebate approvals. If the parties cannot resolve their dispute informally, the dispute shall be determined by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof. The arbitration panel shall consist of one arbitrator selected by the Salt Lake City, Utah office of the American Arbitration Association in accordance with its rules relating to the selection of arbitrators for the determination of issues. The costs of the arbitration and legal fees incurred by the prevailing party shall be borne by the non-prevailing party.

8. Miscellaneous: If any action is brought by any party with respect to its rights under this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees, and all other court costs, as determined by the court and not a jury. If any provision of this Agreement shall be held invalid or unenforceable, it shall not affect in any respect whatsoever the validity or enforceability of the remainder of this Agreement. This Agreement shall be binding upon the parties' respective successors and assigns. This Agreement constitutes the complete and exclusive statement of the agreement between the parties concerning this matter. This Agreement supersedes all prior written and oral statements. No modifications or amendment to this Agreement shall be binding unless in writing and executed by each of the parties hereto. This Agreement may be executed in one or more counterparts each of which shall for all purposes be deemed an original and all of such counterparts, taken together, shall constitute one and the same agreement. The Buyer has the right to require 1Solar to have a performance and payment bond.

9. Roof Improvements: In the event that Buyer is upgrading roof shingles prior to installation, Seller is not responsible or liable for any warranties, damages, repairs, or injuries associated with roof improvements.

10. System Remove/Replace: Should Buyer decide to have the system removed/replaced for a purpose unrelated to system service (new roof, residence relocation, etc.), Buyer is to notify 1Solar and allow at least 30 days in order to receive bid and appointment scheduling. Buyer is responsible to pay in full prior to work commencing.

11. Third Party Verification: Some programs may require verification of completion or quality of work by a third party. If Buyer is contacted at any time by a third-party vendor, Buyer agrees to allow such party access to their home in a reasonable time table so as to not hold up the approval of the incentive applications or rebates due to Seller. If for any reason Buyer does not grant access to the third-party vendor, Buyer agrees to be personally responsible for any payments to Seller for rebates that Seller does not re-ceive, due to Buyer not granting the third-party access to their home.

Copyright 2021 1Solar, ALL RIGHTS RESERVED. DOC.02.02.2021

www.1solar.com

## EXHIBIT A (Continued)

12. Lien Release: Upon satisfactory payment being made for final completion of the work performed, 1Solar may furnish, upon request, to Buyer a full and unconditional release from any potential lien claimant claim or mechanic's lien for that portion of the work for which payment has been made. Lien Release will only be supplied when account balance is paid in full.

13. Commercial General Liability Insurance (CGL): This contractor carries commercial general liability insurance. You may call the con-tractor to check the contractor's insurance coverage.

14. Workers' Compensation Insurance: This contractor carries workers' compensation insurance for all employees.

15. Mechanics Lien Warning: Anyone who helps improve your property, but who is not paid, may record what is called a mechanics' lien on your property. A mechanics' lien is a claim, like a mort-gage or home equity loan, made against your property and recorded with the county recorder. Even if you pay your contractor in full, unpaid subcontractors, sup-pliers, and laborers who helped to improve your property may record mechanics' liens and sue you in court to foreclose the lien. If a court finds the lien is valid, you could be forced to pay twice or have a court officer sell your home to pay the lien. Liens can also affect your credit. To preserve their right to record a lien, each sub-contractor and material supplier must provide you with a document called a '20-day Preliminary Notice.' This notice is not a lien. The purpose of the notice is to let you know that the person who sends you the notice has the right to record a lien on your property if he or she is not paid. BE CAREFUL. The Preliminary Notice can be sent up to 20 days after the subcontractor starts work or the supplier provides ma-terial. This can be a big problem if you pay your contractor before you have received the Preliminary Notices. You will not get Preliminary Notices from your prime con-tractor or from laborers who work on your project. The law assumes that you already know they are improving your property. Upon request of Buyer, Contractor shall furnish lien waivers in the forms prescribed by A.R.S. § 33-1008(0).

16. Governing Law: This Purchase and Installation Agreement shall be governed by the laws of the State of Utah.

17. Workmanship Warranty: 1Solar warrants to the original purchaser (property owner at time work completed as evinced below) that any installation procedures performed will be free from workmanship defects for a period of Ten (10) years ("Warranty Period") after the product is installed as determined by manufacturer. Upon completion of the project, 1Solar will provide all manufacturer warranty information to the original purchaser/property owner. This workmanship warranty covers all workmanship defects related to installed work only. 1Solar will provide service without charge, for Warranty Period, after installation of the product if a problem occurs due to workmanship, in accordance with warranty from the manufacturer issued to the buyer. Service shall be rendered by the company between 8:00 am and 5:00 p.m. on weekdays. In the event of a workmanship defect or a manufacturer's product defect, please contact our office by phone or in writing. When you first experience a problem, immediate contact is of the utmost importance and may prevent further damage. Please provide a detailed description of the defect, if possible. 1Solar is not responsible for damages caused by the lack of mitigation of damages. The warranty statements contained in this section set forth the only express warranties extended by 1Solar for workmanship, and any other representations and/or warranties made by representatives of 1Solar, if any, must be in writing. This warranty terminates or is void in the event that any work is performed on our installed components during the Warranty Period by anyone other than 1Solar, or by acts of nature causing damage to our installed components, including but not limited to, hail, wind, tornado, hurricane, tree limbs, debris and improper maintenance.

18. Roof Penetration Warranty: 1Solar warrants to the original purchaser (property owner at time work completed as evinced below) that any installation procedures performed will be free from penetrations that result in leaking defects for a period of five (5) years ("Penetration Warranty Period") after the product is installed. 1Solar shall repair and remediate any damage attributable to an improper roof penetration. This Penetration Warranty Period may not be assigned or transferred to a third party.

This Penetration Warranty Period shall cover any improper penetrations performed by 1Solar in the installation of your solar system that result in water penetration to the roofing system. The following additional items are excluded from the Roof Penetration Warranty, consequential or additional damages, normal wear and tear on the roof, any defect or damage that is covered by a manufacturer or product warranty, failure of Owner to take timely action to minimize loss or damage. The warranty statements contained in this section set forth the only express warranties extended by 1Solar for roof penetrations, and any other representations and/or warranties made by representatives of 1Solar, if any, must be in writing. This warranty terminates or is void in the event that any work is performed on our installed components during the Warranty Period by anyone other than 1Solar, or by acts of nature causing damage to our installed components, including but not limited to, hail, wind, tornado, hurricane, tree limbs, debris and improper maintenance.

If your roof covering is currently under warranty by a third party, the warranty on the roof covering may be voided by the roofing firm that holds that warranty and/or the roof covering manufacturer if you permit anyone to penetrate the roof covering without the consent of the warranty holder. You should read your roof covering warranty very carefully and/or contact the roofer that holds the warranty prior to initiating this work to make sure that you are not jeopardizing any remaining warranty on the roof covering. The roof warrantor may wish to coordinate the penetration work with 1Solar to preserve your warranty.

19. This Agreement (and the Consumer Protection Disclosure Agreement for Utah and Idaho residents only) constitute the entire and exclusive understanding and agreement of the parties regarding the subject matter hereof, and supersedes, and may not be contradicted or modified by, any prior or contemporaneous understandings, negotiations, agreements, representations, promises, statements or the like (oral or written) of the parties, and may not be modified or amended except by written agreement signed by the parties. Customer may not assign any rights or obligations under this Agreement without the prior written consent of the Seller, or its sole discretion. The Seller may assign its rights under this Agreement. Subject to the foregoing, this Agreement shall inure to the benefit of the Seller's successors and assigns, and be binding upon Customer's permitted successors and assigns.

☐ Homeowner's Association Liability: By checking this box, I consent to have 1Solar perform contracted work before obtaining HOA approval. I understand that if my residence is governed by an HOA, I am liable for any rules/regulations set by the HOA, including those regarding home improvement projects.

Copyright 2021 1Solar, ALL RIGHTS RESERVED. DOC.02.02.2021                                                                                                      www.1solar.com



# Certificate

OF EXTENDED WARRANTY

THIS CERTIFICATE IS PROUDLY PRESENTED TO

This certificate is proof of your 25-Year Extended Warranty through 1Solar. This is an extension of the warranty outlined in your Purchase and Installation Agreement. This zero-deductible warranty covers all workmanship and labor costs, as well as mechanical and electrical failures.

*LaRon Wallace*

1SOLAR

